WILLIAM MURRAY *vs.* JEDEDIAH C. STANTON & another.

A paid to B. bonds of a railroad corporation for goods bought; agreed to deliver to B. within a certain time similar bonds indorsed by another corporation, on condition that B. should upon such delivery restore the bonds first named; and failed to do so, although B. at the end of the time tendered to him said first named bonds. B. then sued A. on the agreement; and while the action was pending B.'s bonds were stolen. *Held*, that, without delivering those bonds to A., although the inability to do so resulted from theft, B. could recover only the excess of the value of the indorsed bonds over the value of the bonds stolen; that the circumstance that the stolen bonds had no market value was not conclusive that they had no value in fact; and that to show that they had some actual value evidence was admissible that they belonged to a set of bonds secured by a mortgage of the road, a section of forty miles of which had been graded and "was worth about the amount of the bonds" of that set.

CONTRACT on an agreement dated April 30, 1861, and signed by the defendants, reciting that whereas they had bought a bill of clothing, amounting to $2500, from the plaintiff, and in payment therefor had delivered to him " three mortgage bonds of the Illinois Southern Railroad Company, numbered respectively 48, 49 and 50, for $1000 each, now, in consideration of one dollar to us paid by said Murray, we hereby guarantee to said Murray, or his legal representatives, to deliver to him or them, within six months from the date hereof, two bonds of the said railroad company for $1000 each, and one bond of said railroad company for $500, each of said last mentioned bonds to be fully indorsed by the Ohio and Mississippi Railroad" and two other railroad corporations named, " but said last mentioned bonds are to be delivered to the said Murray upon the express condition that he shall upon said delivery restore to us the bonds first above mentioned." The declaration alleged due demand by the plaintiff for the indorsed bonds, accompanied by a tender of the three bonds first named; and the refusal of the defendants to fulfil their agreement. Writ dated June 15, 1865.

The answer admitted the making of the agreement by the defendants; and, at the trial in the superior court, before *Lord*, J., without a jury, it was admitted that the defendants did not deliver to the plaintiff the indorsed bonds stipulated for. The

plaintiff introduced evidence that, at the expiration of the stipulated time, and repeatedly afterwards, he offered to restore the other bonds to the defendants, and demanded of them the indorsed bonds instead; and that, after the commencement of this action, his shop was broken into by a burglar and the other bonds were stolen from his safe, or destroyed; and he offered at the trial to execute an assignment of them to the defendants.

He further introduced evidence, which was not controverted, that such indorsed bonds ever since the date of the agreement were worth par in the market; and "also evidence tending to show, and which of itself did show, that the bonds received, at the time when the indorsed bonds were to have been delivered, and up to the time when this suit was brought, had no market value, and were worth nothing in the market in Boston or elsewhere," that they were dated October 1, 1860, with coupons attached for the interest, which was expressed to be payable annually at a bank in New York, and that no coupon of any such bonds had ever been paid.

On the question of the value of the bonds received, the defendants introduced much evidence, including testimony that in 1861 and 1862 they were contractors for building the railroad of the Illinois Southern Railroad Company, and had graded forty of the hundred miles which was the projected length of the road, when in 1862 work on the road was wholly stopped by reason of the civil war, and had never been resumed, nor had any part of the road ever been equipped; that such bonds to the amount of about $250,000, secured by a mortgage of the road to trustees, were issued by the company, and in great part paid to the defendants for their work on the section of forty miles graded, which section, they testified, "was worth about the amount of the bonds." The plaintiff objected to all the evidence thus offered, as incompetent " upon the question of the market value of the bonds received ; " but the judge admitted it *de bene esse.*

" The defendants contended that the plaintiff could not recover; or not, without surrendering the bonds received by him or giving a bond to indemnify the defendants against any claim

on account of them, recover more than the difference between the market value of the bonds received and those which the defendants agreed to give. The judge ruled that the plaintiff, upon delivering to the defendants an assignment of the bonds received by him, and stolen or destroyed, as he was ready to do, was entitled to recover the amount of the indorsed bonds with interest from the date when they were to have been delivered." " And it being agreed that the bonds received had no market value either in Boston or New York, and there being no evidence deemed competent to show such a market value anywhere, the judge found, as a fact, that said bonds had no market value;" and ordered judgment for the plaintiff, for the amount of the indorsed bonds stipulated for in the agreement, and interest. The defendants alleged exceptions.

*G. O. Shattuck,* for the defendants.

*A. A. Ranney,* for the plaintiff.

WELLS, J. This action is for breach of contract for an exchange of bonds. The plaintiff was entitled to receive indorsed bonds " upon the express condition that he shall, upon said delivery, restore to " the defendants other bonds held by him. Upon breach of this contract by the defendants the plaintiff became entitled to recover his damages. By the case stated in the exceptions the bonds held by the plaintiff had become his property in payment for goods. Neither the contract for an exchange, nor the offer and demand of fulfilment, operated to change the title of the respective parties to either set of bonds. By surrendering to the defendants the bonds held by him, ·r bringing them into court for them, the plaintiff might have entitled himself to recover the full value of the indorsed bonds. But he was not obliged to do this. After breach of the contract by the defendants, he might retain and dispose of the bonds held by him, without losing his right to recover for the breach. The rights and liabilities of the parties were fixed by the failure of the defendants to deliver the indorsed bonds at the stipulated time. The measure of damages is the same as in the case of a contract for exchange of any other kind of property; to wit, the difference of value at the time of the breach. The loss of the

bonds, after breach of the contract, only deprived the plaintiff of the power to surrender them, or bring them into court, and recover the full value of the indorsed bonds. It cannot operate to defeat his right of action, but only to limit his recovery to the difference of value. The breach of the contract does not entitle the plaintiff to throw the loss of bonds upon the defendants, and to compel them to accept an assignment of his interest, which may avail them nothing, instead of the bonds themselves. We are of opinion that the ruling upon this point, at the trial, was wrong; and that the plaintiff can recover only the difference of value between the two sets of bonds, without delivering to the defendants the bonds which they were to have in exchange.

If the lost bonds were in fact of no value at the time the contract was broken, the plaintiff would be entitled to recover the full value of the indorsed bonds; and, of course, the defendants would, in that case, have no ground of complaint against the judgment in the court below. The judge who heard the case, after ruling " that the plaintiff, upon delivering to the defendants an assignment of the bonds received by him, and stolen or destroyed," " was entitled to recover the amount of the indorsed bonds and interest," proceeded to find " as a fact, that said bonds had no market value," and rendered judgment accordingly for the amount of the indorsed bonds and interest.

From the manner in which this latter conclusion was reached, we cannot regard the finding, " that said bonds had no market value," as equivalent to a finding that they had no value in fact. If it was so intended, we think the judge erred in holding that there was " no evidence deemed competent to show such a market value anywhere." A market value, as signifying a price established by public sales, or sales in the way of ordinary business, as of merchandise, is not necessary to the assessment of damages, or the appraisal of property that is the subject of a judicial valuation. Property is often the subject of such legal valuation, for which no proof of value in the market could be given, because it is not brought into the course of trade, and is not known in the market, and therefore is incapable of any esti-

mate in that mode. In such cases the real value is to be ascertained from such elements of value as are attainable. The promissory note of an individual may have no market value. But proof of the solvency of the maker, or that the note is se cured on real estate, in whole or in part, would require tha some value, according to the fair estimate of its probable proceeds, should be put upon it. Reverse the present case, and suppose the defendants to have delivered the indorsed bonds according to their contract, and that the plaintiff had withheld the other bonds, can it be maintained that their right to recover anything would depend upon their ability to prove a market value ? The competency of the proof offered in this case is the same as it would be in the case supposed. When there is " a market value," it shows the price at which either party may have relief from the consequences of the default of the other; and therefore it properly measures his damages. But when there is no such standard, the damages must be estimated from other means of valuation. Without discussing the evidence which related to market value strictly, or evidence of facts occurring long since the breach of the contract, we are satisfied that the testimony of the defendants that the bonds, ($250,000 in all,) were secured by a mortgage on the road to trustees; that about forty miles of the road had been graded, and " was worth about the amount of the bonds," was competent to prove value in the bonds. Whatever that value was should have been estimated and allowed to the defendants in reduction of the plaintiff's demand.

We do not understand that any question was raised as to the means by which the defendants sought to prove these facts. The plaintiff objected generally to all the evidence, " as not competent evidence upon the question of market value of the bonds received." The court so held it; and, finding no " market value," gave the plaintiff the full amount of the indorsed bonds.

Upon whichever ground the final conclusion was reached, the defendants are entitled to have their

*Exceptions sustained.*