NATHANIEL S. SIMPKINS et al., Executors, etc., Respondents, v. JOSEPH W. LOW, Appellant.

Upon appeal from an order granting a new trial it is not the right of the appellant to attack rulings made upon the trial in favor of the respondent.

The legal tender acts of congress relate to the effect of the notes issued thereunder, as a tender in payment of debts arising on contract; they do not forbid the recognition in other relations of the difference between coin and currency.

Although a bond or other security may not be made payable in coin, and so may be discharged by the debtor by the payment of the number of dollars called for in legal tender notes, yet this fact does not conclude the plaintiff upon the question of value in an action for the conversion thereof. The expectation of the payment in coin, founded on the usual mode of action in particular communities, upon the sense of moral obligation, and upon general and repeated experience in similar cases may make such securities equal in value to those expressly payable in coin, and in the absence of actual market value may be considered in fixing the value. (JOHNSON, C.)

In an action for the conversion of forty of the San Francisco W. W. Co's. bonds of $500 each, claimed to have been purchased by the defendant as agent for the plaintiff, which bonds did not express in what kind of money they were to be paid, and which were purchased by defendant with his own funds at more than their face in currency, it appeared that the company received gold for its water dues; that gold continued in use in California during the period involved, and that payments and contracts were made in and on the basis of gold; that bonds of this issue were not bought and sold in market, but that money was borrowed upon them as collateral at par in gold. Plaintiff offered to show that they were paid in gold; this evidence was rejected. The court directed a verdict for nominal damages, stating in substance that the legal tender acts substantially hold that $100 in greenbacks are worth $100 in gold. Held error, that said acts did not affect the question as to the value of chattels in an action for their conversion, nor do they forbid the recognition of the difference between gold and currency in fixing the damages in such an action, and that the evidence was sufficient to require the submission of that question to a jury.

(Argued March 15, 1873; decided June term, 1873.)

APPEAL from order of the General Term of the Supreme Court in the first judicial district, reversing a judgment in

favor of plaintiffs, entered upon a verdict and reversing an order denying a motion by plaintiffs for a new trial and granting a new trial. (Reported below, 49 Barb., 382).

This action was brought to recover damages for the refusal of defendant to deliver, and for the conversion of twenty bonds of the San Francisco Water-works Company of $500 each, alleged to have been purchased by defendant as agent for John Simpkins, plaintiffs' testator. Defendant denied the agency, and at the close of the evidence asked for the dismissal of the complaint on the ground that it was, not shown, and that plaintiffs failed to show title to the bonds. This motion was denied. Defendant purchased the bonds for $23,000 in currency. The bonds were not by their terms made payable in gold. Evidence was given, the substance of which is set forth in the opinion, with the object of showing that they were worth par in gold. It was also shown that gold was worth from $2.20 to $2.60 in currency. Other facts and the rulings of the court below thereon are set forth in the opinion.

The court directed a verdict for nominal damages only, to which plaintiffs excepted. The jury rendered a verdict for six cents damages. Plaintiffs moved for a new trial upon the minutes, which was denied.

*Amasa J. Parker* for the appellant. Plaintiffs have no remedy except to proceed in equity to set aside the purchase of the trustee and have the property conveyed to them. (*Sweet* v. *Jacocks*, 6 Paige, 353 ; *Johnson* v. *Bennett*, 39 Barb., 237, 249 ; *Olcott* v. *Tioga R. R.*, 27 N. Y., 546, 567 ; *Smith* v. *Lansing*, 22 id., 520 ; *Garvey* v. *Jarvis*, 46 id., 310.) This being a case of a naked parol agency, this relief cannot be had if the agency is denied. (*Bartlett* v. *Pickersgill*, Eden. R., 515.) This action being for conversion, plaintiff cannot be allowed to recover for a non-feasance or neglect of duty. (*Morse* v. *McKibbin*, 33 Barb., 246.) An action will not lie by a person employing another to do an act without paying him or placing any property in his hands, against that

person, for a mere neglect to do the act. (5 T. R., 143 ; *Coggs v. Bernard,* 2 Ld. Raym., 909.) The damages in this case are too remote for plaintiffs to recover. (*Short* v. *Skipwith,* 1 Brock. Cr. C. R., 193 ; *Bell* v. *Cunningham,* 3 Pet., 69 ; *Greening* v. *Wilkinson,* 1 C. & P., 625.) At the utmost the market value only could be considered. (*Bell* v. *Cunningham,* 3 Pet., 69 ; *Smith* v. *Coudry,* 1 How., 28.) Evidence of the difference in value of gold coin and legal tender notes was properly rejected. (*Legal Tender Cases,* 27 N. Y., 400 ; S. C., 34 id., 609.) The recovery, if any, should be for the amount of the bonds in gold. (*Kellogg* v. *Sweeney,* 46 N. Y., 294 ; *Chrysler* v. *Renois,* 43 id., 209.) The chance or expectation that the company would pay the bonds in gold is not a legal cause of value or a subject of sale. (*Munsell* v. *Lewis,* 4 Hill, 635, and cases cited.)

*Samuel Hand* for the respondents. This court must affirm the order of the General Term, as it cannot interfere with the jurisdiction of the court below on the facts. (*Wright* v. *Hunter,* 46 N. Y., 409 ; *Sands* v. *Crook,* id., 564.) Whatever property defendant purchased as plaintiffs' agent, became *eo instanti* the property of plaintiffs. (*Robinson* v. *U. Ins. Co.,* 1 J. R., 592.) The fact that the agent paid for the article with his own money, at the request of the principal, does not affect the question of title. (*Markham* v. *Jaudon,* 41 N. Y., 235 ; *Stewart* v. *Drake,* id., 449.) Plaintiffs were entitled to a verdict for the full value of the bonds, without any deduction for the price paid for them. (*Vincent* v. *Conklin,* 1 E. D. S., 203.) Plaintiffs were entitled to a verdict for the highest value the bonds had borne at any time prior to the trial. (*Blot* v. *Boiceau,* 3 Coms., 78 ; 3 Pars. on Con. [5th ed.], 190, *et seq.;* *Romaine* v. *Van Allen,* 26 N. Y., 309 ; *Burt* v. *Dutcher,* 34 id., 493 ; *Wilson* v. *Little,* 2 id., 443 ; *Markham* v. *Jaudon,* 4 id., 235 ; *West* v. *Westervelt,* 3 Cow., 82 ; *Hart* v. *Ten Eyck,* 2 J. Ch., 116 ; *Arnold* v. *Suff. Bk.,* 27 Barb., 424 ; *Wilson* v. *Matthews,* 24 id., 295.) Plaintiffs' damages were to be computed in currency. (*Bk. of Com-*

*monwealth* v. *Van Vleck*, 49 Barb., 509.) The legal tender act had no bearing upon this case. (*Chrysler* v. *Renois*, 43 N. Y., 209; *Kellogg* v. *Sweeney*, 46 id., 291.) Where an article has no market value, everything tending to show the pecuniary advantages accompanying its possession is receivable in evidence. (*Harris* v. *Panama R. R. Co.*, 5 Bos., 7; *Marshall* v. *N. Y. C. R. R. Co.*, 5 Barb., 505; *Hoffman* v. *Ætna Ins. Co.*, 19 Abb. [N. S.], 325; *Wemple* v. *Stewart*, 22 Barb., 154.)

Johnson, C. If the new trial ordered in this cause had been submitted to by the appellant the respondents might have supported his case in respect to any of the points ruled in his favor at the original trial by further or different evidence. It is therefore not the right of the appellant to attack the rulings at the trial which were made in favor of the plaintiff.

If we assume that the new trial was not granted upon a question of fact, as the court at General Term had power to do, a motion having been made on the judge's minutes for a new trial and denied, and an appeal having been taken to the General Term by the plaintiffs; then it must have been granted because one or more of the plaintiffs' exceptions to the rulings at the trial were well taken.

The court had ruled in favor of the plaintiffs on the defendant's motion to dismiss the complaint, made upon the ground that the plaintiffs had proved no title to the bonds about which the controversy was, and this point is therefore not here for discussion. Against the plaintiffs the judge at the trial ruled that they could only recover nominal damages saying that congress had passed a law which in substance declares that $100, in greenbacks are worth $100 in gold. To this the plaintiffs excepted. He also in various forms ruled against the admission of evidence offered by the plaintiffs as bearing upon the value of the bonds, and therefore upon the amount of the plaintiffs' damages, and to these rulings the plaintiffs excepted. Some

of the questions excepted to related to bonds of the same issue as those involved in this case, and called for an answer as to what they were paid in, which were not allowed to be put, the plaintiffs excepting to the rulings. It is contended by the appellant that none of these inquiries related to the particular bonds involved, but the last inquiry of the kind "do you know in what these bonds were paid" coupled with the offer immediately following the defendant's general objection, and the plaintiffs' offer in connection with it to show that the witness canceled some of the bonds and that all of the bonds of this description were paid in gold on presentation, shows at least, that these particular bonds, were covered by the question and offer. The ruling of the court excluded the question and offer, so far as it was to show that they were paid in gold. This ruling was followed by an offer by the plaintiffs to show that the payment in gold, was made pursuant to a resolution of the directors of the company, which being excluded, the ruling was excepted to. It appeared by uncontradicted evidence (for the defendant produced none), that the company issuing these bonds, received gold for its water dues, that gold continued in use in California during the period involved, and that payments and contracts were made in and on the basis of gold. It was shown that bonds of this issue, were not bought and sold in market, and therefore had no market price, but that money was borrowed on them as collateral at par in gold, and that gold and currency differed in value in San Francisco.

Looking at the rulings of the court, and at this evidence which was received, it is obvious that the decisions at the trial present for consideration, the question whether the legal tender acts of congress forbid the recognition of the difference between gold and currency in respect to the question of damages, as between these parties. To this it must be answered, that those acts as finally expounded by the Supreme Court of the United States, relate to the effect of the notes issued under them as a tender in payment of debts arising upon contracts, and that they do not forbid the recogni-

tion in other relations of the difference between coin and currency. This was decided first in *Knox* v. *Lee* (12 Wallace, 457). That case was approved, explained and followed in *The Vaughan and Telegraph* (14 Wallace, 258, 268). Mr. Justice Swayne giving the opinion, and citing *Knox* v. *Lee,* says : " There the court instructed the jury that in assessing the plaintiff's damages they might take into account the fact that the judgment could be paid in legal tender notes and this court upon error affirmed the correctness of that instruction." The principal case decided that it was proper to give a judgment in currency equivalent in amount to the damage estimated in coin, and that this was the correct mode of proceedings.

In the next place we are met by the fact that the bonds involved might have been discharged by the debtor to the holder in currency by the tender and delivery in payment of the number of dollars they called for in legal tender notes. And the question is, does that fact conclude the plaintiffs in this suit. Between them and the defendant the question is not one between debtor and creditor. The bonds were chattels, and the law does not fix the value of chattels. It certainly does not forbid their possessing whatever money value is shown in fact to have been possessed by them. It is true that these chattels expressed an engagement to pay a certain number of dollars, and that this engagement was capable of being extinguished as well by paper dollars as by dollars in coin. Although this was the legal consequence of the legal tender acts, yet in the Supreme Court of the United States judicial notice was taken of the fact that in the Pacific States, in respect to contracts the constitutional currency continued in use, notwithstanding those laws. (12 *Wallace,* 678). It is indisputable in fact that expectation of payment in coin founded on the usual mode of action in particular communities, upon the sense of moral obligation, upon general and repeated experience in similar cases, may rise to so high a degree of moral certainty as to make such securities esteemed to be equal in value to those upon which

coin may be lawfully demanded and exacted. These considerations go to fix the market value where there is one. In the absence of an actual market I know no reason why they may not be considered by any tribunal charged with the duty of adjusting men's rights in respect to securities of such a nature. Why should a court be the only place where men most affect an ignorance of what all men know? Were it necessary, I should be willing to give my judgment that upon these grounds alone, the question is open for the consideration of the jury to estimate the value of these securities. But there is affirmative evidence of value equal to or closely approximating the coin rate, in the fact testified to, that money could be borrowed upon these bonds as collateral at par in coin. It was upon that evidence, a question for the jury, at least, whether upon such loans the value of the collateral is not alone or mainly considered, and in that event it afforded as fair and direct a means of measuring the value, though not so exact and conclusive, as sales in an actual market.

Upon these grounds I am of opinion that there was no error in the reversal of the judgment at Special Term, and that judgment absolute should be rendered against the defendant, the amount of damages to be ascertained in the Supreme Court.

All concur.

Order affirmed and judgment accordingly.