WEST NASHVILLE ' PLANING-MILL COMPANY *v.* NASH-
VILLE SAVINGS BANK.

*(Nashville.* January 7th, 1888.)

CORPORATIONS.  *Stock.  Purchaser.  Liability for unpaid subscription.*

A *bona fide* purchaser of shares of stock, for value, and without notice,
either from the face of the stock certificates or otherwise, that the
subscription price is unpaid, cannot be held by the corporation for
the unpaid subscription price.

Cases cited and approved: Jackson *v.* Sligo, 1 Lea, 210; Moses *v.* Ocoee
Bank, 1 Lea, 398; Cornick *v.* Richards, 3 Lea, 1; Cherry *v.* Frost, 7
Lea, 1; 91 U. S., 65.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson
County.  A. G. MERRITT, Ch.

WHITMAN & GAMBLE for Complainant.

JOHN RUHM for Defendant.

LURTON, J.  The complainant, a manufacturing
corporation created under the provisions of the Gen-
eral Incorporation Act of 1875, sues the defendant
upon a stock call duly made for twenty-five per cent.
of subscription price upon forty-five shares of stock
now standing upon the stock books of complainant

in the name of Julius Sax, President. This stock was originally subscribed by one J. B. Tucker, who paid one-half of the subscription price, but to whom was issued stock certificates, one of which was in the following words:

" Shares $100 each.

" *West Nashville Planing-mill and Lumber Company, Nashville, Tenn.:*

" This is to certify that J. B. Tucker is entitled to thirty-five shares, of one hundred dollars each, in the capital stock of the West Nashville Mill and Lumber Company of Nashville, subject to all the conditions and stipulations contained in their articles of incorporation; transferable by him or his attorney only on surrender of this certificate.

" In testimony whereof, the President and Secretary of said company have hereunto subscribed their names.　　　　R. F. WOODARD, *President.*

" T. O. TREANOR, *Secretary.*"

The defendant bank, without notice that the stock was not in fact paid up, and in good faith, made a loan to Tucker, and took his stock certificates as collateral security, with usual power of attorney to transfer same. Subsequently the bank surrendered original certificates, and caused new certificates to issue to itself identical in form with the original. Under these facts defendant must be treated as if an innocent purchaser for value, without actual notice of the fact that the stock

was subject to future calls for unpaid balance of subscription price. A number of defenses to this suit have been very ably and earnestly pressed by the solicitor for the bank, but in the view we take of the case we need only determine one of them. The general rule concerning the effect of the transfer of shares in a corporation is that such transfer operates as a novation of the contract of membership. The transferer ceases to be a share-holder, and the transferee becomes one. The first is ordinarily relieved from all further liability to contribute capital, and loses all right to participate in the further profit or management; the transferee takes the place of the retiring member, and by implication assumes all the obligations which rested upon the former holder as a member of the company, and ordinarily becomes liable for calls to the same extent as the former owner before the transfer was made. Assuming the burthens, he becomes likewise entitled to all the benefits attaching to ownership of the shares. In the absence of charter provisions or statutory regulations, this general rule is almost universally recognized. Morawetz on Corporations, Sec. 159, 2d Ed., and authorities cited.

It is clearly so settled in this State. *Jackson* v. *Sligo*, 1 Lea, 213; *Moses* v. *Ocoee Bank*, 1 Lea, 398.

Stockholders become such in several ways—either by original subscription, or by assignment of prior holders, or by direct purchase from the company. It is not at all essential that at the time there is

an original subscription there shall be an express promise to pay the subscription price. Oftener than otherwise there is none, the subscription being a simple agreement to take so many shares of stock. By necessary implication there arises from such a subscription a promise to pay the par value of such stock, upon which an action of assumpsit lies. *E. T. & Va. R. R.* v. *Gammon,* 5 Sneed, 570.

The Massachusetts and Maine cases, holding an express promise necessary, are exceptional, and are based chiefly upon the charter remedy of a sale of the stock being regarded as exclusive in the absence of an express agreement to pay. The liability of the transferee of unpaid stock is expressly put upon the same ground of an agreement by implication from the acceptance of a transfer of unpaid stock, thus coming into privity with the corporation, and by implication rendering himself liable to action by the corporation for subsequent calls for unpaid balance of subscription price. Morawetz on Corporations, 2d Ed., 159; *Webster* v. *Upton,* 91 U. S., 65.

The Pennsylvania cases, holding that the transferee is not liable without express agreement, are exceptional, and do not commend themselves to us by their reasoning.

The General Incorporation Act of 1875, under which complainant holds its charter, contains nothing which affects the question of the ordinary liability of a transferee to the corporation. Section

five of that act only provides for the continued liability of the transferer in the case mentioned.

As we have seen, the rule which makes a transferee liable for unpaid calls is based upon the implied agreement arising where one takes shares subject to calls, and causes them to be transferred to himself. But where the purchaser of such shares buys them as *paid-up shares*, and without notice that in fact they are not paid up, then no implication arises of an agreement to pay anything to the corporation for such shares. In such case there are no facts from which to imply an agreement. The representation made by the corporation, either upon the face of the stock certificate or by its officers, that the shares are paid up will, as between the corporation and such transferee, prevent any contract by implication. Morawetz on Corporations, Sec. 161; Cook on Stocks, Secs. 50, 257, and 418.

The question arising upon the certificates in this case is not so easy of solution, inasmuch as there is no express declaration on the face of it that the shares are non-assessable or paid up. In such a case the question is a perplexing one as to whether the purchaser of such shares is bound, at his peril, to make inquiry, or whether he is not protected by the want of notice.

This certificate is in the usual commercial form of certificates issued for shares fully paid up. There is no intimation upon its face that it is not what it appears to be. The corporation, in putting such shares upon the market, has put it in the power

of the subscriber to sell the same to persons innocent of the true fact. Under such circumstances, ought the corporation to be suffered to demand from an innocent transferee, for value, the balance of the subscription price? Certificates of stock are *quasi* negotiable securities. The vast number of such shares daily sold upon the market have led the courts to aid their commercial and negotiable character in favor of purchasers without notice of secret liens.

Thus an assignment of a certificate of stock is held to pass the legal title to such shares to the assignee, even without transfer upon stock book or other notice to the corporation. *Cornick* v. *Richards*, 3 Lea, 1.

Again, this Court held that if the pledgee of a stock certificate, with blank power of attorney, subpledge such certificate for money loaned, the subpledgee, if ignorant of the title of his pledgor, will hold the certificate as against the true owner. *Cherry* v. *Frost*, 7 Lea, 1.

In view of the important character assumed by shares of stock in both the speculative and investment markets, and in view of the readiness with which corporations can guard themselves, as well as purchasers of such shares, by issuing only fully paid shares, or by expressing upon the face of such as are not paid up the fact that they are subject to call for unpaid subscription price, we hold, in the interest of the negotiability of such shares and of what we deem a true public policy, that a

*bona fide* purchaser of a certificate of stock, for value, and without notice, either from the face of the certificate or otherwise, that the subscription price has not been paid, will be protected as between himself and the corporation negligently issuing such shares. This rule we regard as most in accord with the usages, customs, and demands of commerce, and as calculated to prevent the assumption of unsuspected liabilities on the one hand, and the illegitimate use of unpaid shares of stock on the other. Cook on Stocks, Secs. 50 and 257.

The rule is in analogy with the principles governing contracts, as there can be no implied contract to pay unpaid calls where the purchaser buys what he is entitled to believe are paid-up shares.

The decree of the Chancellor is affirmed.