Deck, Adm'r, v. Feld.

FLORIEN DECK's Administrator, Respondent, v. JOSEPH
FELD, Appellant.

Kansas City Court of Appeals, January 6, 1890.

1. **Damages:** CORPORATION STOCK: MARKET VALUE: EVIDENCE:
INSTRUCTION. Where corporation stock is sold without any stipu-
lated price, the law implies a promise to pay the market value;
and, in order that it should have a market value, it is not necessary
it should be the subject of daily traffic; it is enough if it was occa-
sionally the subject of sale or exchange in the community, so as
to fix at different times a customary price. The evidence in this
case is examined and *held* to submit to the jury a succession of
actual transactions tending to inform them as to the customary
value of the stock, and precludes the necessity of investigating the
affairs of the corporation to determine the value of the stock, and
an instruction is condemned for not confining the jury to the
market value of the stock at the time of the sale.

2. ——— : ——— : VERDICT UNSUPPORTED BY EVIDENCE. The true
measure of damages was the market value of the stock at the time
and place of sale, and not at some future time, and the evidence is
examined and found not to support the verdict and judgment.

*Appeal from the Jackson Circuit Court.*—HON. J. H.
SLOVER, Judge.

REVERSED AND REMANDED

*Lathrop, Smith & Morrow*, for the appellant.

(1) At the time of the alleged sale of the stock, no
price being fixed, the law implied a promise on the part
of the defendant to pay its then market value, and
nothing more. Wood's Mayne on Damages, sec. 12,
pp. 14–16; *Henckley v. Hendrickson*, 5 McLean, 170;
*Honitzky v. Meyer*, 49 N. Y. 571; *Shields v. Pettie*, 4
N. Y. 122, 125; *Hill v. Hill*, 1 N. J. L. (1 Coke) 261;
*Gibson v. Pub. Co.*, 28 Mo. App. 450. (2) Plaintiff's first
instruction told the jury to assess the damages at the
value of the stock at the time of the sale. This was

error. It permitted the jury to take into consideration the land which the fair association owned, speculate upon its value at the time, in the absence of all evidence, and award the plaintiff the proportional part of such value which the two shares bore to the whole number issued. Such an estimate of damages was unauthorized. *Haysler v. Owen*, 61 Mo. 270; *Vickery v. Evans*, 16 Ind. 331; *Althouse v. Alvord*, 28 Wis. 577. (3) Plaintiff's first instruction was inconsistent with the sixth instruction given at the instance of defendant which properly declared that the measure of damages was the market value of the stock at the time of the purchase. Such inconsistency is reversible error. *Hoenschen v. O'Bannon*, 56 Mo. 289, 292; *Stevenson v. Hancock*, 72 Mo. 612; *Price v. Railroad*, 77 Mo. 508; *Lampert v. Gaslight Co.*, 12 Mo. App. 575-6; Thompson on Trials, sec. 2326, p. 1682. (4) The verdict is absolutely without any evidence to support it, and so grossly excessive that the court should not permit it to stand. *Carr v. Ins. Co.*, 2 Mo. App. 466; *Baldridge v. Bryan*, 3 Mo. 371; *Goetz v. Ambs*, 22 Mo. 170; *Logan v. Small*, 43 Mo. 254; Sedgwick on Meas. Dam. [7 Ed.] p. 655, note *a*. (5) A verdict so unreasonable in amount, and rendered in such utter defiance of the testimony, must have been the result of prejudice on the part of the jury and, not representing their honest judgment upon the evidence, ought to be set aside and the cause remanded for a new trial. *Lionberger v. Pohlman*, 16 Mo. App. 392; *Friesz v. Fallon*, 24 Mo. App. 439, 442; *Spohen v. Railroad*, 87 Mo. 74, 84.

*Sherry & Hughes*, for the respondent.

(1) The evidence from which the jury determined the value was received without objection from defendant. He will not now be heard to say it was improper evidence, as furnishing a basis of values. (2) Defendant attempted to show that the stock had no market value;

it was proper then to ascertain its value from other sources than the market price. *Simpkins v. Lowe*, 54 N. Y. 179; Sedgwick on Damages [7 Ed.] p. 586, note *a;* *Harris v. Railroad*, 58 N. Y. 660; Wood's Mayne on Damages [1 Am. Ed.] sec. 211.   (3) Where there is no market value, as shown by the price, of sales on the market, in ascertaining the value of notes, stocks, bonds, etc., it is proper to enquire into the security for the bonds or notes; or solvency of makers, and of value of property represented by stock to determine value of them.   *Murray v. Sutton*, 99 Mass. 347; *Dyer v. Rich*, 1 Met. [Mass.] 180; *Simpkins v. Lowe*, 54 N. Y. 179; Wood's Mayne on Damages, sec. 22.   (4) The jury are the sole judges of the credibility of the witnesses, and of the weight of the testimony, and its probative force, and of the proper inferences of fact to be drawn from the facts proven.   Where there is slight evidence to sustain verdict it must stand.   *Watts v. Douglas*, 10 Mo. 676; 3 Graham and Waterman on New Trials [1 Ed.] 1239 and 1240; *Cape Girardeau v. Bruihl*, 51 Mo. 144; *Moore v. Pieper*, 51 Mo. 157; *Burham v. Railroad*, 56 Mo. 338; *Wannell v. Kemm*, 57 Mo. 478; *Durke v. Chambers*, 57 Mo. 575; cases cited by SHERWOOD, J., in *Holden v. Vaughn*, 64 Mo. on page 589; Graham and Waterman on New Trials, 1261; *Goodman v. Smith*, 4 Dev. 450; *August v. Dickerson*, 1 Meigs, 459.   (5) Where there is any evidence to support a verdict, it will not be disturbed simply because it may be thought to be against the weight of the evidence.   *Hamilton v. Berry*, 74 Mo. 176; *Roach v. Colburn*, 76 Mo. 653; *Russell v. Berkstresser*, 77 Mo. 417; *Landis v. Hamilton*, 77 Mo. 554; *Birney v. Sharp*, 78 Mo. 73; *Gregory v. Chambers*, 78 Mo. 294; *Norton v. Moberly*, 18 Mo. App. 457.

GILL, J.—The plaintiff Deck brought this action to recover of defendant, Feld, the value of two shares of the capital stock of the " Inter State Fair Association "

of Kansas City, of the par value of one hundred dollars each—which said Deck alleged he sold and delivered to said Feld in January, 1886, and that said Feld agreed then and there to pay therefor what such stock was reasonably worth. Defendant denied the sale, admitted the transfer of the two shares of stock to him, but claimed that such stock was turned over to him, in payment for certain services in negotiating a sale of some of Deck's real estate. The issues were submitted to a jury, under instructions from the court, and a verdict and judgment rendered for plaintiff in the sum of sixteen hundred dollars. Defendant thereupon appeals to this court.

I. The sole matters for our consideration here are : *First*, what rule should govern in fixing the *quantum* of plaintiff's recovery—since, on conflicting evidence, the jury found the fact to be, as alleged by plaintiff, that defendant in January, 1886, *did purchase* these two shares of stock, and that they were not taken by defendant, as he testified, in payment of commissions for selling plaintiff's real estate—and, *second*, the rule, or measure, of damages being determined, was the finding of the jury supported by any evidence so that the court will not disturb the judgment.

Opposing counsel differ less as to the rules of law applying to the measure of damages in cases generally, than as to what rule is properly invoked here. All will agree to the general proposition : That, where an article is sold by A to B without stipulating a definite price, the law will imply a promise on the part of B, the vendee, to pay its then market value. This rule is based on the assumption, of course, that the property sold *has a market value.* Should the thing sold, however, be such as has not been bartered and sold in the community, such as has no market value—then, as contended by plaintiff's counsel, resort may be had to sources other than the *market value* to determine the extent of the vendor's recovery.

The holding in case of *Simpkins v. Lowe*, 54 N. Y. 179, illustrates the rule last announced. In that case, for the recovery of the conversion of the bonds of a California corporation, which had never been sold on the market, and therefore had no market value, it was permitted to show that, although the bonds were payable in paper money, yet that in California they were treated as payable in gold, and, gold being worth a premium, the bonds on that account were appreciated and might be estimated by that standard. So, too, in *Murray v. Stanton*, 99 Mass. 345, it was permitted a party seeking to recover the value of certain railroad bonds to show—in absence of any proof of value on the market, or rather in the presence of affirmative proof that there had been no sales, and therefore no market value—that such bonds were secured by a mortgage of the road, and that some forty miles of the same had been graded, etc., and was worth about the extent of the encumbrance.

If then Feld purchased Deck's two shares of stock, and the same were delivered to Feld with no agreement as to the price to be paid, then the law imposes an obligation on said Feld to pay the value of such stock at that time, January, 1886, and that value should be fixed by the then customary or market price at the place of sale.

Plaintiff's counsel contend that the evidence shows, indisputably, that there was no such market price, and therefore that resort may be had to an investigation of the assets and affairs of the fair association in order to determine a value. We cannot assent to this construction of the testimony. It is true that witnesses did so state, but there is in this record evidence tending to show a market value. Proof is not wanting to establish various sales of the stock about the date of the sale to Feld. For example—witness Bower, in September preceding the date of this transfer, took five shares at the rate of forty dollars per share. Wideman testified to a

sale of shares at one hundred dollars per share.   Defend-
ant Feld testified that the stock was of small value and
that he had known of a few shares at twenty-five dollars
to fifty dollars per share.   Witness Ross testified to the
effect that he "never heard of the fair association stock
being below par," that is one hundred dollars per share,
while plaintiff Deck admitted making an offer of two
shares in controversy to defendant Feld, a short time
before the sale, at one hundred dollars per share.
Witnesses Payne and Webster testified that about the
date of the transfer of this stock to Feld (January,
1886), in their opinion the stock had no money value
whatever, for the reason assigned by Mr. Webster (who
was secretary and manager of the association), that the
stock was paid no dividends, and that the theory of the
old management then in control was that the associa-
tion was more for the public good than that of indi-
viduals, and that the earnings were by common consent
of the stockholders to be devoted to improvement of
the grounds, and ultimately these grounds should be
converted into a public park.

In order that this stock should have a market value
it was not necessary that it should be the subject of
daily traffic, bought and sold on the streets, or in the
frequent dealings of tradespeople.   It was enough if it
was occasionally a subject of sale or exchange in the
community, so as to fix upon the same at different times
a customary price.   It is the knowledge of actual
transactions, or sales of a commodity, that qualifies a
witness to testify to a market value.   2 Sutherland on
Damages, p. 376 *et seq.*   We have here submitted to the
jury, in trying this case, a succession of actual trans-
actions, all tending to inform them as to the customary
value put on these shares of stock.   We are of the
opinion then that this is not one of those cases where
there is no market value, and where the affairs of the
corporation must needs be investigated to determine the

value of its shares of stock. Plaintiff's instruction numbered one, therefore, was erroneously given, since it failed to confine the jury, in the measure of recovery, to the market of the stock at the time of the sale to Feld.

II. But again, even admitting this a proper case. for the application of the rule contended for by plaintiff's counsel, we should still feel impelled to reverse this case for the reason, seldom applied in this court, that the verdict is unsupported by any evidence in that the jury found these shares of stock to have been worth, in January, 1886, the sum of eight hundred dollars each when there is no evidence even tending to prove such value. It seems clear that the jury determined the value of this stock by the showing made of the condition of the association and the advanced price of its land in the fall of the year of 1887, more than a year subsequent to the sale of the two shares of stock in controversy. The evidence shows that in January, 1886, the date of sale of Deck to Feld, the conditions were these: The affairs of the association were in the keeping of a directory and management who regarded its property more as a matter of public concern than of private interest, who thought to continue the enterprise as a public institution paying no dividends, and in the end to turn the fair grounds into a park for the public use, and hence it was that witnesses thought in view of this the stock had, in January, 1886, no pecuniary value, was worthless. But the evidence shows that a new directory, a new management, came into power in the beginning of the year 1887, whose declared policy was a dissolution of the fair corporation, the sale of its valuable lands, and winding up its affairs, with distribution of the assets, after payment of the debts, to the various stockholders.

This change of policy, which occurred more than a year after the sale of the two shares in January, 1886, immediately imparted to the shares of stock a largely increased pecuniary value, since now they were to share

in the proceeds of a valuable distribution. The highest price of these shares, testified to by any witness, even as·late as eighteen months after the sale in controversy, was the sale of witness Bower of his five shares in June, 1887, and that was at the rate of three hundred and fifty dollars per share. Yet the jury in the trial of this cause, when fixing a value for January, 1886, assessed the shares of stock at eight hundred dollars each. It was the situation attending the sale in *January, 1886*, that should have been regarded by the jury when they came to assess the value of the stock which Feld had bought. It was the value *at the time and place* of sale not the value at some *future* time, when the conditions were so different. 2 Sutherland on Damages, 349.

We think then that the verdict, in so far as it found the value of the two shares of stock, in January, 1886, to be sixteen hundred dollars, is wholly without evidence in its support, and for that reason also this judgment must be reversed.

Judgment reversed and cause remanded for a new trial. All concur.