BRINKERHOFF-FARRIS TRUST AND SAVINGS COMPANY v. HOME LUMBER COMPANY, *Appellant*.

Division Two, December 7, 1893.

1. **Corporation:** DIRECTORS: BY-LAWS. The directors of a business corporation organized under Revised Statutes, 1879, article 8, chapter 21, are only empowered to make by-laws directing the manner of taking votes of stockholders on the question of increasing or diminishing the number of directors or trustees or of changing the corporate name. (Revised Statutes, 1879, sec. 709.)

2. ———: ———: ———: TRANSFER OF STOCK. Such directors are not authorized to enact by-laws making it a condition of transferring the corporate stock that the holder shall first have offered it for sale to the directors and shall have paid all his indebtedness to the corporation.

Trust and Savings Co. v. Home Lumber Co.

3. ——: ——: ——: ——. When no restriction is placed by public law on the transfer of corporate stock, a purchaser is not affected by any contractual restriction of which he had no notice.

4. ——: ——: ——: ——: WAIVER. Where a corporation enacts a by-law making transfers of stock subject to a lien for any indebtedness of the holder to the corporation and prescribes that such by-law shall be printed on all certificates of stock as a notice to purchasers of the existence of such lien, a failure to print such condition on the stock certificates will be considered a waiver thereof as to subsequent purchasers.

5. **Corporate Stock, Value of:** CONVERSION: EVIDENCE. The measure of damages for the conversion of stock, if it has no market value, is its actual value which may be established by proof of its dividend-earning capacity or the value of its assets or individual sales of stock not under compulsion.

6. ——: ——: ——. The market value is presumptively the par value in the absence of evidence of actual sales.

7. ——: ——: ——: EXPERT. An expert is incompetent to give his opinion, founded on its dividend-earning capacity, of the corporate value of stock.

*Appeal from Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Harding & Buller* for appellant.

(1) The defendant's by-law, making all transfers of stock subject to the lien of the company for indebtedness of the holder, was valid as a proper restriction upon the transfer. *Spurlock v. Railroad*, 61 Mo. 319, and cases cited; 25 Mo. App. 642; *Ins. Co. v. Goodfellow*, 9 Mo. 49; *Bank v. Bank*, 45 Mo. 513. (2) Certificates of stock in a corporation are not negotiable paper, and a mere assignment without a full transfer on the books of the company, while good between the parties, does not make the assignee an innocent *bona fide* holder for value. *Bank v. Railroad*, 13 N. Y. 623; *Stebbins v. Ins. Co.*, 3 Paige, 350; Angell and Ames on

Corporation [3 Ed.], p. 352, 353; *Hull v. Road Co.*, 70 Ill. 673; *Shaw v. Spencer*, 100 Mass. 382; Parsons on Contracts [6 Ed.], p. 290, note. (3) A person buying stock in a corporation ought to make inquiry to ascertain if there will be any objection to its transfer on the books of the company. *Bank v. Bank*, 63 Cal. 363. (4) And he merely becomes the holder of the equitable title who cannot be a innocent *bona fide* purchaser for value as against the superior equity of of the company. 76 Mo. 13; *Jennings v. Bank*, 79 Cal. 323; *Tyler v. Weston*, 77 Cal. 534; *Bank v. Laird*, 3 Wheat. 393; *McReady v. Rumsey*, 6 Duer 582; Beach on Private Corporations, sec. 646, p. 1019. (5) The condition requiring the transfer to be only on the books of the company is sufficient to put the purchaser upon inquiry. *Jennings v. Bank, supra.* (6) The plaintiff's declarations of law ought therefore to have been refused and defendant's first declaration ought to have been given. The fact that the by-law in question, purported to have been passed by the directors, did not invalidate it. They were also the holders of almost all of the stock. *People v. Mfg. Co.*, 82 Ill. 457; *Heintzelman v. Rel. Ass'n*, 38 Minn. 138. (7) And such a lien may be created by mere usage without any by-law. *Jennings v. Bank*, 79 Cal. 323. (8) Or by a mere agreement among the shareholders or usage known to them. *Vansards v. Bank*, 26 Conn. 144; 11 American Decisions, 575. (9) The court erred in admitting the evidence as to statements alleged to have been made by Moore & Davis to Caldwell, Shields and others, giving their opinions of the value of the stock. The opinion of an agent is not to be taken as an admission by the principal. *Ins. Co. v. Mahone*, 21 Wall. 157; *Packet Co. v. Clough*, 20 Wall. 528; *Hubbard v. Silver*, 7 Wend. 446; *Tuggle v. Railroad*, 62 Mo.

425; *Bank v. Bunk*, 60 N. Y. 279. The statements of an agent are mere hearsay. *Kelly v. Railroad*, 88 Mo. 534; 1 Greenleaf on Evidence, sec. 113. (10) Besides which the alleged statements were mere loose talk, pending, and apparently intended to affect a bargain between other parties, and were not made to plaintiff, nor did they have any influence upon its action, and the talk with Mr. Brinkerhoff was long after the plaintiff had gotten hold of the stock. A corporation is a legal entity entirely distinct from its stockholders or officers. *Thompson v. Allen*, 86 Mo. 85. (11) The testimony of Farris as to the value of the stock was incompetent. He did not pretend to know its market value and had no means of knowing its intrinsic value. The value of a certificate of stock in a corporation is the market value of the shares, if they have a market value. *Deck v. Feld*, 38 Mo. App. 674; *Ormsby v. Company*, 56 N. Y. 623. (12) And where there is no market value the value of the shares must be found from an examination of the affairs of the company. *Deck v. Feld, supra*; *Ice Co. v. Heinze*, 14 S. W. Rep. 674; 102 Mo. 245; Sedgwick on Measure of Damages [8 Ed.], sec. 257. (3) Farris did not even pretend to be an expert as to the lumber business, and it was therefore error to permit him to testify as such. *Mfg. Co. v. Phelps*, 9 Circuit Court Rep. 601; 130 U. S. 520.

*Johnson & Lucas* for respondent.

(1) A mere rule of the bank could not affect the rights of third persons to whom certificates were sold or pledged for value in the regular course of business. *Carrol v. Bank*, 8 Mo. App. 254. A lien created by a by-law, in order to be effective must be brought to the knowledge of the transferee. *Bank v. Pinson*, 58 Miss. 421; 38 Am. Rep. 330; *Driscol v. West Bradley*, 59 N. Y. 97; *Bank v. Bank*, 6 Am. and Eng. Corp. Laws, 543; see,

also, *Bank v. Pinson*, 38 Am. Rep. 335; Lowell on Transfer of Stock, sec. 166. (2) The question of the negotiability of corporate stock is an open one with tendency of modern decisions in favor of the affirmative. Boone on Corporation, sec. 122; *Supply Ditch Co. v. Elliott,* 3 Am. State Rep. 591; *Bank v. Lanier*, 11 Wall. 369; *Johnson v. Laflin*, 13 Otto, 800; *Stinson v. Thornton,* 56 Ga. 377; *Bank v. Gifford*, 47 Iowa, 375; *Lee v. Bank*, 2 Tenn. 298. (3) Where a by-law of a bank provided that stock could only be transferred on the books of the company, the title to the stock (both legal and equitable) would pass without transfer on the books by assignment. *Moore v. Bank*, 52 Mo. 377; *Bank v. Richards*, 74 Mo. 77; *O'Brien v. Cummings*, 13 Mo. App. 197. (4) The provision in the by-law providing for the printed notice to purchasers must be held to mean that the lien would not be assessed against a person not having this notice. *Bank v. Pinson*, 58 Miss. 421; 38 Am. Rep. 335; *Bank v. Bank*, 63 Cal. 359; *Bank v. Bank*, 86 Tenn. 252; Cook on Stocks, secs. 50, 257. (5) There was no error in the admission of the evidence of the witness, Farris, as to the value of the stock. *First.* In actions for conversion of personal property, such as these shares are, the damages are not limited to the market value of the stock. Its actual value to be determined under all the circumstances, such as the dividend making capacity, the good will, etc., etc., is the measure of damages. *Freon v. Carriage Co.*, 42 Ohio St. 794; *Freon v. Carriage Co.*, 51 Am. Rep. 794. *Second.* It has been held that where there have been no actual sales of an article, a witness may give his opinion of its value. 1 Sutherland on Damages, p. 801; *Simpkins v. Low*, 49 Barb. 382; *Erd v. Railroad*, 41 Wis. 65; *Whitfield v. Whitfield*, 40 Miss. 352; *Anson v. Dwight*, 18 Iowa, 241; *Rogers v. Ackerman*, 22 Barb. 134.

GANTT, P. J.—In February, 1888, the Brinkerhoff-Farris Trust and Savings Company loaned J. W. Cleland $13,000 and accepted as collateral security, two certificates of stock in the Home Lumber Company, each certificate calling for fifty shares, of the par value of $100 per share.   One certificate was numbered 40 and bore the date of May 1, 1885, and the other was dated April 12, 1886.

The certificates were in the following form and were alike, save as to the number and date:

### "CERTIFICATE OF STOCK.

"STATE OF MISSOURI.

### "HOME LUMBER COMPANY.

"No. 40.                                    50 Shares.

"This is to certify that J. W. Cleland is proprietor of 50 shares of the, capital stock of the HOME LUMBER COMPANY, transferable only on the books of the company by said stockholder or his attorney upon surrender of this certificate.

"Nevada, Mo., May 13, 1885.

"J. W. CLELAND, President.

"B. H. McDONALD, Secretary.

"Endorsed:   J. W. CLELAND."

Cleland having defaulted in the payment of the note for which the stock was security, the trust and savings company sold it and, through its president, became the purchaser thereof June 24, 1889, and afterwards, on June 28, 1889, presented the two certificates to the lumber company and asked to have the stock transferred to it on the books of the lumber company, which was refused because the lumber company asserted that Cleland was indebted to it in the sum of $13,000 and it had a lien on said stock by virtue of its "by-laws," and for the further reason, that it claimed that, by another by-law, Cleland was restricted from selling this

stock to any outsider until he had first given the refusal to the board of directors and the purchase thereof had been refused by each and every member of the board.

The trust and savings company insisting that it had no notice of such by-laws, and that they were void as to it, brought this action as for a conversion of the stock alleging its value to be $11,000 on the twenty-eighth of June, 1889, the date of the alleged wrongful conversion.

The defendant, after a specific denial of the allegation of the petition, made the following additional defenses:

"Further answering, defendant says that by article 12 of the by-laws of defendant, adopted in the year 1881, it was provided, that no stockholder should sell or assign any of his or her certificates of stock to any person not already a stockholder unless he or she shall first have offered the same to the board of directors and the purchase thereof been refused by each and every member thereof at the prices offered by any other person, and that said Cleland never did offer said stock to said board of directors, nor gave them, nor any stockholder, the refusal thereof, and that plaintiff never was a stockholder of defendant.

"And, further, that on the first day of July, 1884, the defendant duly adopted by-laws which provided, among other things, that the stock of the company should be transferred only on the books of the company, and any transfer of the stock shall be subject to the lien of the company thereon for any indebtedness due the company from the holder thereof.

"And that at the time of the alleged transfer of the said stock by said Cleland to plaintiff, he was and still is indebted to defendant to the amount of $5,000, now long overdue, and that he is insolvent, and if plaintiff ever procured said stock from him at all it was

only a collateral security for a loan, and with full notice of the said by-laws:

"Wherefore defendant avers that plaintiff had no right to have said stock transferred to it, and that if it should turn out that plaintiff is the holder of said Cleland's interest therein, then it is subject to the lien of defendant for the $5,000 indebtedness aforesaid, and also that in this event the court will adjudge it to be subject to said lien, and order it sold for the payment thereof, etc."

To this answer the plaintiff duly filed a reply saying it had no knowledge nor information sufficient to form a belief as to whether or not Cleland was indebted as alleged, and denying that the shares of stock were subject to any indebtedness of Cleland's.

The evidence tended to show that Cleland owned the one hundred shares of stock; that it was paid up; that he was indebted to the company about $13,000 when he transferred the stock to the trust company. It appeared from the proceedings of the board of directors in 1881, and prior to the date of either certificate, that the board adopted the following by-law:

"Any shareholder shall not sell nor assign any of his or her certificates of stock to any person not already a stockholder unless he or she shall have first offered the same to the board of directors and the purchase thereof been refused by each and every member thereof at the price offered by any other person."

And on July 1, 1884, the board adopted the following by-law:

"Article 10, section 1. The stock of this company shall be transferred only on the books of the company, and any transfer of stock shall be subject to the lien of the company thereon for any indebtedness due the company from the holder.  *  *  *."

And the following resolution:

"Resolved, that section 1, article 10, of the by-laws first adopted, be written or printed on all certificates of stock of said Home Lumber Company, as a notice to purchasers of said stock of the lien of the company for any indebtedness of the holder thereof to the company."

Section one of article 10 of the by-laws was adopted in July, 1884, and none of the stock in this controversy was issued till May, 1885, and a portion in 1886, but neither of these certificates had section 1, article 10, either written or printed on it.

The testimony fails to show any notice to plaintiff of the existence of either of the by-laws mentioned, or of Cleland's indebtedness to the lumber company prior to taking the stock as security. And if it is to be bound by them, it must result from an implied notice, growing out of the nature of the security itself, or by the notice acquired after the loan was made and before the sale under the pledge.

Plaintiff offered evidence that the stock had paid an annual dividend of nine per cent. every year since the incorporation of the company in 1881, except one year when it only paid two and one-half per cent., one year, ten per cent. Mr. Moore, the president, and Mr. Davis, the secretary, testified that Cleland's other stock was sold for sixty and seventy cents, after his failure.

H. P. Farris was sworn and testified, that he was treasurer of Brinkerhoff-Farris Trust & Savings Company; that this company was engaged in the general business of mortgage loans, discounts, etc.; that he had been engaged in the general brokerage business for seventeen years and had a large experience in the negotiation of loans in stocks and bonds during that time, at Clinton, Henry county, Missouri. He was

then asked this question: "*Q.* State to the court what, in your judgment, stock that produced, nine out of ten years, a dividend of not less than nine per cent. and sometimes ten, and possibly more, is reasonably worth, in the market for sale?"

Objection by counsel for defendant. It is not a proper way to arrive at the value of the stock. Objection overruled and defendant excepts.

"*A.* It would certainly be worth not less than par in my judgment."

The court also permitted plaintiff to prove by Caldwell and other witnesses, that Messrs Davis and Moore, had represented to other holders of Cleland's stock, that it was worth par, in their opinion, to which evidence defendant duly excepted.

The court declared the law to be that, unless plaintiff had notice of the indebtedness of Cleland, and the by-laws of July 1, 1884, before it took the stock as collateral, then it was not bound by said by-law; and refused to declare the law to be that, if it had such notice before buying the stock from Farris, it would be bound by it. The court also refused to declare the law to be that, if Cleland had not complied with the by-law requiring him to first offer the stock to the company before selling it elsewhere, the plaintiff could not recover.

The court found the issue in favor of the plaintiff and assessed the damages at the par value of the stock and interest from date of demand. Motions for a new trial and in arrest were duly made and overruled and exceptions were duly taken to the admission and exclusion of evidence and giving and refusing instructions and the case is brought to this court by appeal.

I. The defendant is a business corporation organized and existing under the provisions of article 8, chapter 21, of Revised Statutes of 1879, and the

general provision of article 1, of said chapter 21, so far as applicable.

By section 709, Revised Statutes, 1879, the directors of a corporation like this are only empowered to make "by-laws to direct the manner of taking the votes of stockholders on the question of increasing or diminishing the number of directors or trustees, or of changing the corporate name." The power to make all other needful or necessary by-laws is conferred upon the corporation itself, and can only be exercised by the stockholders. *Rex v. Westwood*, 7 Bing. 1; *Bank v. Bank*, 17 Mass. 33; *Carroll v. Bank*, 8 Mo. App. 249; *State Savings Association v. Printing Co.*, 25 Mo. App. 642; *Albers v. Merchants' Exchange*, 39 Mo. App. 583.

It was very clearly pointed out by Judge HAYDEN in *Carroll v. Bank, supra*, that in the cases of *Mechanics' Bank v. Merchants' Bank*, 45 Mo. 513, and *Ins. Co. v. Goodfellow*, 9 Mo. 149, and *Spurlock v. Railroad*, 61 Mo. 326, the directors in each case, received their authority to make the by-laws in question in those cases directly from the legislature.

It is very clear that the attempt of the directors of the defendant company to adopt the by-laws, restricting the rights of its stockholders to convey their stock to any one until the said directors had refused to purchase it or while indebted to the corporation, was without warrant or authority of law, and as such is not binding, either on the stockholders or those purchasing from them. The company itself had no right to pass such a by-law. *Moore v. Bank*, 52 Mo. 377.

But it is claimed by appellant that the so-called by-law and the resolution, although not valid as a by-law, is nevertheless binding as a valid agreement on all who were parties to it, and that, as Mr. Cleland was then the president of defendant and a director, he was bound by it, and that plaintiff, as a purchaser from

Cleland, took only an equity, and was chargeable with notice of this lien, asserted by defendant, and that all the certificates of stock are not negotiable papers, plaintiff cannot occupy the position of an innocent purchaser for value and without notice.

It is true that certificates or shares of stock are not *strictissimi juris* negotiable paper, but they approximate to it as nearly as practicable. In *Bank v. Lanier*, 11 Wall. 369, the supreme court of the United States said, "the power to transfer their stock is one of the most valuable franchises conferred by congress on banking associations. Without this power, it can readily be seen the value of the stock would be greatly lessened, and, obviously, whatever contributes to make the shares of the stock a safe mode of investment, and easily convertible, tends to enhance their value. * * * It is in obedience to this requirement that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form nor character negotiable paper, they approximate to it as nearly as practicable."

It has been uniformly ruled in this state, with the exception of *White v. Salisbury*, 33 Mo. 150, that in the absence of a legislative enactment restricting the transfer of stock to any particular mode, the transfer is complete on delivery of the certificate with power to transfer and the payment of the purchase money, not only between vendor and vendee, but when the corporation has unjustifiably refused to make the transfer on its books, against a creditor of the vendor who, without notice of the transfer, attaches the stock. *Ins. Co. v. Goodfellow*, 9 Mo. 149; *Chouteau Spring Co. v. Harris,* 20 Mo. 382; *Moore v. Bank*, 52 Mo. 377; *Mer-*

*chants' Bank v. Richards*, 74 Mo. 77, approving same case in 6 Mo. App. 454; *Wilson v. Railroad*, 108 Mo. 588. See, also, *Planing Mill v. Bank*, 86 Tenn. 252; *Johnston v. Laflin*, 103 U. S. 800; *Webster v. Upton*, 91 U. S. 65; *Bank v. Bank*, 63 Cal. 359.

So that we think it can now be safely affirmed that when no restriction is placed upon transfer of stock by the public law of the state, of which all are bound to take notice, or the transferrer of the stock is not bound by a valid contract of restriction of which the transferee or assignee has notice, one who purchases a certificate of stock, receives and pays for it, is not bound by any restriction or lien of which he has no notice.

The spirit of all modern legislation is opposed to secret liens. At common law a corporation has no lien on the stock of its stockholders for any indebtedness to it. Accordingly, when such a lien is asserted, it should clearly appear to be authorized by public law, or by a duly adopted by-law, or valid agreement, of which the purchasers of the stock have notice. None of these conditions existed as to the stock in suit when it was transferred as security for plaintiff's loan, and consequently plaintiff took it without being bound by so-called by-law and resolution.

By section 739, Revised Statutes, 1879, this stock was expressly declared to be personal estate and transferable in the manner prescribed by the by-laws and no shares should be transferred until all previous calls thereon should be fully paid. The only restriction on the transfer by this section is upon the stock which was not fully paid up; a restriction not applicable here, because this stock was fully paid up in the beginning. The purpose of permitting the company to require a transfer on the books was clearly to advise the company of the change of ownership in order that only the owners of the stock should participate in the cor-

porate election, and to enable the corporation to pay dividends without risk, or make assessments upon the holders of its stock, but certainly it was not intended that under this power to regulate transfers, the company should create or reserve a secret lien upon the stock. Without reference to its quasi-negotiable character, the pledge or sale of this stock was simply a pledge or sale of personal property, and the·pledgee or vendee, without notice of the lien, took it discharged therefrom. He did not purchase a mere equity in paper, but he purchased personal property. If that property was bound by a lien of which he had lawful notice, he took subject to it, and if he had no such notice he took it discharged therefrom. The mere recital that "it was only transferable on the books of the company" was not notice, either of a restriction on sale, or of a lien thereon.

Nor are we impressed with the equity of defendant's claim. It urges that it permitted Cleland to become indebted to it because he owned the stock, and yet it permitted him to remain its ostensible owner, and exacted neither pledge nor mortgage on it, although aware that there was nothing on the face of the stock to indicate it had, or claimed, a lien on it. Against an innocent subsequent purchaser, there would seem to be little to commend defendant's claim to a court of justice. *Bullard v. Bank*, 18 Wall. 589; *Driscoll v. Mfg. Co.*, 59 N. Y. 96; *Moore v. Bank*, 52 Mo. 377.

II. But, upon another ground, we think plaintiff ought not to be subject to the lien of Cleland's indebtedness. The defendant had attempted to adopt this by-law and resolution, which required "said section 1 of article 10" to be printed on the face of this stock, and yet issued it afterwards without these conditions printed on it. Its conduct in this respect can only be construed, as to all subsequent purchasers of this stock,

as a waiver of its by-law.   By the clearest principles
of right it is estopped from asserting this *lien* now, as
against the plaintiff, who was without notice.   *Bank
v. Pinson*, 58 Miss. 421; *Moore v. Bank*, 52 Mo. 377;
*Planing Mill v. Bank*, 86 Tenn. 252; *Bank v. Bank*, 63
Cal. 359; *Bank v. Durfee, ante*, p. 431.

The court correctly declared the law to be that,
unless plaintiff had notice of the indebtedness of
Cleland and of the by-law of July 1, 1884, before it
took the stock as collateral, then it was not bound by
said by-law, and properly refused the instruction assert-
ing a contrary principle.

III.  The remaining question relates to the method
of fixing the value of the stock for the purposes of
assessing the damages for its conversion.

It is plain that the stock had no market value.
None of it was ever listed or sold, except Cleland's, and
that was sold to the officers of defendant, under the
assertion of a lien to the amount of twenty-two and
one-half per cent. of its value.   Under these circum-
stances the learned circuit judge permitted plaintiff to
show the value of this stock by proving its capacity
for earning dividends, and it was shown that it had
averaged nine per cent. per annum, for ten years, and
plaintiff then called a broker as an expert to show
that stock that had for ten years earned nine per cent.
dividends was worth par.   Generally, the measure of
damages for the conversion of stocks is their market
value at the time of conversion, but when, as in the
case at bar, no market value can be established by the
prices current, it seems to us perfectly competent to
resort to other modes of proof to establish its actual
value, and this may very properly be done by proof of
its dividend earning capacity; the value of the assets of
the corporation and by individual sales of stock not under
compulsion.   Cook on Stock and Stockholders, sec. 581,

note 3, and cases cited; 1 Spelling on Private Corporations, sec. 499, p. 545; *Freon v. Carriage Co.*, 42 Ohio St. 30; *Deck v. Feld*, 38 Mo. App. 674; *Simpkins v. Low*, 54 N. Y. 179; *Murray v. Stanton*, 99 Mass. 345. "In the absence of evidence of actual sales, the market value is presumptively the par value." *Harris' appeal*, 12 Atl. Rep. 743; *Alexander v. Relfe*, 74 Mo. 495.

IV. The court permitted Mr. Farris, after qualifying as an expert, to give his opinion as to the value of the stock based upon its dividend earning capacity for ten consecutive years. 1 Sutherland on Damages [2 Ed.], sec. 448. And this is assigned as error in these words: "It is not the proper way to arrive at the value of the stock." It will be observed that the objection does not go to the competency of Mr. Farris as an expert, but simple to the manner of showing value.

We do not think his opinion is competent, but as the plaintiff was entitled to the presumption that the stock was worth par in the absence of a market value, it being fully paid up, and as its capacity to earn dividends was shown to be large, and the burden was on defendant to show the market value was lower than par, and the sales it showed were made to the officers of defendant some six months after refusal to recognize plaintiff's rights, and, under an assertion of their lien upon the stock, its admission is not sufficient to reverse the cause, especially in view of the statements of both the president and secretary of defendant to the officers of plaintiff that the stock was worth par. These admissions were made by the managing officers of defendant as such, in discharge of their duties as such, and moreover was competent, we think, as tending to contradict their evidence as to the stock being worth only sixty to seventy cents.

The trial court properly declared the law, and heard all the estimates as to the value of this stock, and its judgment is clearly for the right party, and is affirmed.   All concur.