FETZER v. SOUTH SIDE LUMBER CO. OF CHICAGO.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1913.)

No. 1,866.

1. PLEDGES (§ 56*)—FORECLOSURE—EFFECT.

Defendant's agreement to hold an interest in a lumber company which had been pledged to him above his own claim as security for any damages to plaintiff arising out of a contract between plaintiff and the pledgor was in personam, and was therefore not affected by defendant's foreclosure and sale of the pledged claim in settlement of his own prior lien, since, on defendant's purchase of the claim at his own sale, he acquired the title subject to his agreement to hold the balance for plaintiff.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 152–183; Dec. Dig. § 56.*]

2. APPEAL AND ERROR (§ 1010*)—FINDINGS—REVIEW.

A finding of fact by the trial court which has support in the evidence will not be reviewed on appeal to determine the weight of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982; Dec. Dig. § 1010.*]

3. PLEDGES (§ 31*)—SECURITY—CONVERSION—MEASURE OF DAMAGES.

Defendant, to whom an interest in a land and lumber company had been pledged to secure a debt of $6,000, agreed to hold the balance of such interest to secure any damages plaintiff might sustain under a contract with the pledgor; but, before the plaintiff's damages were ascertained, defendant purchased the pledged interest under an alleged foreclosure of his own lien, and thereafter refused to assign the same on plaintiff's tender of the debt for which the interest had been pledged. Held, that defendant was liable for plaintiff's damages, which was the difference between the $6,000 and the value of the pledged interest, and interest from the date of plaintiff's tender and demand; such amount not exceeding the damage plaintiff was entitled to recover under his contract with the pledgor.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 86–88; Dec. Dig. § 31.*]

4. CORPORATIONS (§ 123*)—PROPERTY INTEREST—VALUE—DETERMINATION.

Where a one-fifth interest in the property of a corporation was pledged, its market value could be determined only by ascertaining the value of the corporation's property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 612, 618; Dec. Dig. § 123.*]

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin; Arthur L. Sanborn, Judge.

Action by the South Side Lumber Company of Chicago against Henry Fetzer. Judgment for plaintiff, and defendant brings error. Affirmed.

Defendant in error, herein termed "plaintiff," made a contract with the George Pankratz Lumber Company, herein termed the "Pankratz Lumber Company," for the purchase of logs and the manufacture of lumber at Sturgeon Bay, Wis. Before the execution of this contract, and as a part consideration therefor, the plaintiff in error, termed "defendant" herein, who was interested in the transaction as cashier and a stockholder of the bank of Sturgeon Bay, wrote a letter dated at Sturgeon Bay, Wis., January 9, 1907, to plaintiff, which letter reads as follows, viz.:

"Gentlemen: Your letter of the 7th inst., directed to R. P. Cody, vice-

---

president of the Bank of Sturgeon Bay, just received, and replying to the same will say that the Bank of Sturgeon Bay is the owner of the mortgage on the George Pankratz Lumber Co. property in this city. The interest in Vans Harbor Land & Lbr. Co. is owned by George and Frank J. Pankratz. I am the owner of the $6,000 incumbrance on the George Pankratz and Frank J. Pankratz interest in the Vans Harbor Land & Lumber Co. and am willing to hold it as security for any loss that you may incur under your contract with the George Pankratz Lumber Co. subject to my incumbrance of $6,000, and in case there is a loss to you when you settle up your business under your contract with the George Pankratz Lumber Co., I will assign the interest of George and Frank J. Pankratz in the Vans Harbor Land & Lumber Co. to you as security for the loss you may incur, if any, unless the George Pankratz Lumber Co. pays said loss.

"I believe that this will cover what you want. Of course, in the event of an assignment of the interest in the Vans Harbor Land & Lumber Co. to you, as above, you would have to pay me the $6,000.00.

"Yours Truly,                                              Henry Fetzer."

The subject-matter proposed to be assigned consisted of an equitable one-fifth interest in the capital stock of the Vans Harbor Land & Lumber Company, which stock had not been issued. This interest was held by Fetzer subject to his lien for an advance to said George Pankratz of the said sum of $6,000, by him, said Fetzer. As further security, the Pankratz Lumber Company, in said contract, conveyed to plaintiff all its interest in said Vans Harbor Land & Lumber Company, which stood in the name of the two Pankratzes. Frank J. Pankratz subsequently acquired a one-half interest in said one-fifth of said Vans Harbor Land & Lumber Company's stock, subject to the said lien of $6,000. This one-fifth interest the District Court found from the evidence to be of the value of $10,000, and there is evidence in the record to sustain that finding. It was the expectation of the parties that the operations under said log and manufacturing contract would be closed by January 1, 1908. As a matter of fact, the matter was not closed up until about November 1, 1908. In the meantime, and about January 1, 1908, defendant began writing plaintiff asking it to take steps to enable defendant to realize on its said $6,000 loan, and to take the stock interest off its hands.

On January 8, 1908, defendant notified plaintiff that unless action was taken he would transfer the interest in the stock to someone else. Plaintiff replied on January 10, 1908, that the affairs of the log and manufacturing company had not yet been settled so as to disclose the result, although a deficiency had been ascertained, and that it was not yet in position to say whether it would require the Vans Harbor Stock. On January 24, 1908, plaintiff received a letter from defendant peremptorily demanding that it make its election to take or not to take the stock. To this, no answer was given, and defendant wrote again. On March 10, 1908, plaintiff wrote that it wished to wait until the facts were learned, and asked for patience on defendant's part, and saying, "We expect to avail ourselves of any profit there may be in the stock you hold, if necessary, and will do the best we can to bring it to a termination at the earliest possible moment." On June 9, 1908, defendant wrote again asking to know whether "you intend to take the security that I hold from George and Frank Pankratz in the Vans Harbor Land & Lumber Company," and that he did not intend to hold it any longer. On July 7, 1908, defendant against plaintiff's protest, instituted proceedings, to which plaintiff was made a party, and served merely by publication to foreclose the $6,000 lien. Plaintiff failed to appear, and such proceedings were had as that said stock was duly sold to defendant to satisfy his demand then fixed at $6,939.16. Thereafter, and on January 15, 1909, plaintiff notified defendant that it had elected to take over said stock, tendered to him the $6,000, and demanded the delivery of the interest which defendant had in the Vans Harbor Land & Lumber Company, which demand was refused, defendant claiming that he had foreclosed his lien. At the time of the tender by plaintiff, defendant held the stock interest as purchaser at his said sale. Subsequently, he sold it to Perley Lowe for $7,500.

Plaintiff thereupon, and on April 13, 1909, instituted this suit, laying its damages for the failure of defendant to assign to it said interest in said stock pursuant to said agreement, at the date of said tender, at the sum of $15,655.50, with interest from November 1, 1903. After answer filed, the parties waived a jury and consented that the cause be tried before the court. On the hearing, the court found the facts as hereinbefore stated, and also found that the said Vans Harbor Land & Lumber Company was the owner of about 40,000 acres of wild cut over land, 2,800 acres in farms, a sawmill, and certain personal property, all of which, including the capital stock, was worth $70,203.55; that at the date of the tender, January 15, 1909, the value of said one-fifth interest in said corporation was $10,000; that the loss of the plaintiff growing out of defendant's refusal to transfer the contract with the Pankratz Lumber Company exceeded the sum of $4,000. Objection is made to this finding on the ground that the books of plaintiff were not placed in evidence, and that the witness Somers was permitted to swear that from an inspection of the books it appeared that there was a loss in excess of $18,000, but the objection to the absence of the books appears to have been waived subsequently. The conclusions of law of the District Court are:

"(1) The assignment or pledge of George Pankratz to defendant carried as full and complete a title to the Vans Harbor stock as the assignor himself had, and thereafter was subject only to his equity of redemption, and that of his subsequent assignee, Frank Pankratz.

"(2) The foreclosure cut off this equity of redemption, but left the same kind and quality of title in defendant as he previously had.

"(3) The manufacturing contract passed no interest whatever in the Vans Harbor stock to the South Side Company, because the Pankratz Company never had any interest therein.

"(4) The letter of January 9, 1907, vested no interest in the Vans Harbor stock in the South Side Company, but simply gave the latter an option to take the same on certain conditions. Its rights were wholly in personam; hence the foreclosure decree was without effect upon the South Side Company.

"(5) By the terms of the aforesaid letter the South Side Company was not required to exercise its option until its business under the manufacturing contract was completed, which did not occur until October 27, 1908, whereupon it promptly demanded compliance with the terms of the letter.

"(6) By the refusal of defendant to transfer the Vans Harbor interest to plaintiff upon said tender, and his subsequent sale thereof, he wrongfully converted the same to his own use, and became liable for the resulting damage to plaintiff, which was the sum of $4,000, with interest at 6 per cent. from January 15, 1909, to the entry of judgment herein."

Exceptions to the finding of facts made by the court were filed and overruled. Numerous errors were assigned, of which we deem it necessary to consider only the following, viz.:

The finding of the District Court that the one-fifth interest in the Vans Harbor Land & Lumber Company covered by the letter of Fetzer dated January 9, 1907, was of the value of $10,000.

The finding of said court that plaintiff's loss under the contract for logs, etc., and the manufacture of lumber, etc., with the Pankratz Lumber Company exceeded the sum of $4,000.

The finding by said court that plaintiff was not required to exercise its option to take said interest in the Vans Harbor Land & Lumber Company until its business under the same was completed, which was not the case until October 27, 1908, and that plaintiff's rights were not affected by the foreclosure proceedings.

The finding that by his refusal to transfer said interest in the Vans Harbor Corporation on tender of $6,000, and his subsequent sale thereof, defendant wrongfully converted said interest to his own use, and became liable for the resulting damage to plaintiff, which was the sum of $4,000 and interest thereon at 6 per cent. from the time of demand, i. e., January 15, 1909, and costs.

A. L. Nash and L. J. Nash, both of Manitowoc, Wis., for plaintiff in error.

James G. Flanders, of Milwaukee, Wis., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). By the letter of January 9, 1907, defendant bound himself to assign to plaintiff, on tender of the $6,000 due him, the interest of George and Frank J. Pankratz in the Vans Harbor Land & Lumber Company, as security for any loss the plaintiff might incur by reason of its contract with the George Pankratz Lumber Company. This latter contract contemplated the completion of its terms during the years 1906 and 1907. As a matter of fact, through no fault of the plaintiff, completion was not had until October 27, 1908, when a loss of over $18,-000 was ascertained. In the meantime, after repeated notices and demands that plaintiff elect, and after notice that steps would be taken to reduce its said $6,000 lien to cash, defendant foreclosed the same in a proceeding to which plaintiff was made a party, and brought in by publication, but to which proceeding it made no defense. The decree of foreclosure provided that the defendants in said suit and all persons claiming under them should be forever barred and foreclosed from all right, title, interest, and equity of redemption in the mortgaged or pledged property, except the right of redemption before sale. Thereafter the property was sold pursuant to law to defendant for the amount of his demand, fixed at $6,939.16.

This was the situation at the time of the tender by plaintiff. Was defendant required under his agreement with plaintiff to hold said interest in the Vans Harbor Land & Lumber Company subject to the right of plaintiff to elect whether to take it or not, after the year 1907 and until the final settlement of the affairs growing out of the Pankratz Lumber Company contract? And, if so, was the amount of loss definitely ascertained prior to about the time of the tender to defendant of the $6,000?

[1] The agreement between defendant and plaintiff was in personam. Such an undertaking could not be affected in a foreclosure proceeding. Plaintiff had only defendant's agreement to assign his said pledge contract in case of its election to take. No interest in the defendant's pledge contract or in the subject-matter thereof passed to plaintiff under the contract granting it the option; therefore there was no right in rem of plaintiff to be foreclosed in defendant's foreclosure suit. As was said by the District Judge in his conclusions of law:

"The foreclosure cut off this (that of the Pankratz brothers) equity of redemption, but left the same kind and quality of title in defendant as he previously had."

So far as concerns plaintiff, this is unquestionably correct. Whether by proper proceedings defendant could have barred plaintiff from asserting any rights under his said undertaking of January 9, 1907, we need not here consider. At the time demand was made, all rights

of the Pankratzes, if any, had expired, and defendant was fully empowered to carry out its contract.

[2] Error is assigned upon the finding of the court that plaintiff's loss under the George Pankratz Company contract amounted to more than $4,000. As a matter of fact, plaintiff claims that it exceeded $18,000. A number of objections to the method followed in arriving at this sum were raised by defendant, especially to the interest items thereof. As will be seen from the statement of facts hereof, the District Court had before it evidence to support its finding, and this court will not attempt to weigh the evidence and unsettle that judgment. The same is true of the court's finding that the value of the interest in the Vans Harbor Company held by Fetzer and by him tendered to plaintiff in his letter of January 9, 1907, was $10,000. The District Court might lawfully make that finding upon the evidence before it, and we may not, under the facts of this case, go back of its judgment. The amount received by defendant on his subsequent sale of said one-fifth interest to Lowe cannot be taken as fixing the value of said interest.

[3] It was held by the District Court that the amount of plaintiff's damages in the case should be the difference between the $6,000 secured as above to defendant and the value of that security, i. e., $10,000. This difference of $4,000, it gave judgment for, together with interest thereon from the date of the tender by plaintiff and costs. As we look at the matter, plaintiff was entitled to have the security contract turned over to himself on demand and tender of the $6,000. That being so, and defendant, having wrongfully refused to make the $6,000 and assign the contract as he should have done under his agreement, was liable to plaintiff for its damages thereby sustained, viz., the sum of $4,000, and no reason is apparent why he should not be charged with interest from the date of tender and demand, viz., January 15, 1909.

[4] It must be borne in mind that defendant's security contract did not call for stock, but for a one-fifth interest in the Vans Harbor Land & Lumber Company. Manifestly, its market value could be arrived at only by ascertaining what property it represented. We think that the method pursued by the District Court in arriving at its value was the correct method under the circumstances. Murray v. Stanton, 99 Mass. 348; Ruppel v. Adrian Furniture Co., 96 Mich. 455, 456, 55 N. W. 995; Feige v. Burt, 124 Mich. 565–568, 83 N. W. 367.

Numerous errors are assigned to the method pursued in regard to the taking of testimony. On the whole record, we think that sufficient evidence was properly admitted to justify the District Court in rendering its judgment, and that substantial justice has been done.

We find no reversible error in the judgment of the District Court, and it is therefore affirmed.