## MUDD et al., Appellants, v. DILLON.

### Division Two, December 17, 1901.

1. **Conveyances:** DELIVERY: DEPOSITARY: DOMINION OVER DEED. So long as a deed in the hands of a depositary is subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none; and if the grantor dies without parting with his control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it. The depositary must have had such a dominion over it during the lifetime of the grantor as the latter could not interfere with, in order to have any control over it after his death. Otherwise, a turning over of the deed to the grantee after the grantor's death is not a delivery, and without delivery there is no execution of a deed.

2. ———: PATENT AMBIGUITY. A defect in the description of the land attempted to be conveyed, if apparent on the face of the deed, is not latent, but patent, and extrinsic evidence, as a rule, is not admissible to remove the ambiguity. The omission of township and range is a patent defect in the description.

3. ———: ———: OMISSION OF TOWNSHIP AND RANGE: DEED OF GIFT. The omission of township and range, in the description of land, is such a patent ambiguity as renders the deed void. And where such a deed is a deed of gift, based on love and affection for the grantee, a child, a court of equity will not enforce it, or undertake to correct it.

Appeal from Montgomery Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*Norton, Avery & Young* for appellants.

(1) There was no delivery of either of the deeds offered by the defendant. Hamerslough v. Cheatham, 84 Mo. 13; Abbe v. Justus, 60 Mo. App. 300; Sneathen v. Sneathen, 104 Mo. 201; Huiser v. Beck, 55 Mo. App. 668; Pitts v. Sheriff, 108 Mo. 110; Tyler v. Hall, 106 Mo. 313; Huey v. Huey,

65 Mo. 689; Burke v. Adams, 80 Mo. 504; Standiford v. Standiford, 97 Mo. 231. (2) The deed of July 12, 1890, from John S. Dillon to George V. Dillon, purporting to convey the 240 acres of land in sections 12 and 13 was absolutely void, and should not have been admitted in testimony. Carter v. Holman, 60 Mo. 498; Hardy v. Matthews, 38 Mo. 121; Campbell v. Johnson, 44 Mo. 247; Cass County v. Oldham, 75 Mo. 50; Ford v. Unity Church Society, 120 Mo. 498; Boyd v. Ellis, 11 Iowa 97; Bosworth v. Farenholz, 3 Iowa 87; Worthington v. Hylyer, 4 Mass. 205; Fuller v. Fellows, 30 Ark. 657; Bailey v. White, 41 N. H. 337; 30 Ark. 640; Doe v. Porter, 3 Ark. 18; Adams, Equity Jurisprudence, p. 25, and note; Missick v. Sunderland, 6 Cal. 297; 3 Washburn on Real Property (3 Ed.), p. 347; 2 Devlin on Deeds, sec. 1011; Cheneworth v. Haskil, 3 Peters 96; Boardman v. Reed and Ford, 6 Peters 345. (3) The father being dead and the deed on its face showing it to be a voluntary conveyance as deed of gift, there can be no reformation. Ford v. Unity Church Society, 120 Mo. 498. (4) The court should not have admitted extrinsic testimony to identify the township and the range, over objection of the plaintiff. Authority cited under point 3, supra.

*Fry & Clay* and *J. D. Barnett* for respondent.

(1) The court will remember this deed was executed July 12, 1890, and was delivered by the grantor to John Shaw with instructions to deliver the same to the defendant, George Dillon, at the death of the grantor. The grantor died on the second day of February, 1897, and the deed was delivered on the twelfth day of February, 1897, and the defendant went into possession of said lands, and has continued in possession of the same ever since. There is no doubt but this was sufficient delivery to pass title. Devlin on Deeds (2 Ed.), sec. 328, states the general rule that the title passes upon a second

delivery, that is, the delivery from Shaw to George Dillon, or upon the happening of the event, and the instrument will relate back to the first delivery so as to pass title at that time. The cases are fully set forth by said authority in that section. To the same effect: Appleman v. Appleman, 140 Mo. 309; Sneathen v. Sneathen, 104 Mo. 201; Rumsey v. Otis, 133 Mo. 85. The law presumes much more in favor of a delivery in case of a conveyance to a wife or child. Hamilton v. Armstrong, 120 Mo. 597; Crawder v. Searcy, 103 Mo. 97; Standiford v. Standiford, 97 Mo. 231. (2) Equity by the aid of parol evidence will add or supply a misdescription or omission in a deed. The omissions of the township and range in which the land intended to be conveyed is situated, is a latent ambiguity, and extrinsic evidence was admissible to show what land the grantor intended to and did convey, and the deed was not void because of such omission. Rhodes v. Outcalt, 48 Mo. 367; Key v. Jennings, 66 Mo. 369; Cox v. Esteb, 81 Mo. 399; 2 Pomeroy's Equity, sec. 865; Henderson v. Dickey, 35 Mo. 120; Brocking v. Strat, 17 Mo. App. 304. And especially will the court correct a misdescription, and it is not necessary that the land be described either by section, township or range. 2 Devlin on Deeds (2 Ed.), secs. 1012-1013; Craven v. Petit, 16 Mo. 210; Bollinger Co. v. McDowell, 99 Mo. 632; Hammond v. Johnson, 93 Mo. 214; Hart v. Rector, 7 Mo. 531; Bates v. Bank of Mo., 15 Mo. 309; Bank v. Bates, 17 Mo. 383; Webster v. Blount, 39 Mo. 500; Cooley v. Warren, 53 Mo. 166; Tetherow v. Anderson, 63 Mo. 96.

BURGESS, J.—This is an action of ejectment for the possession of three hundred acres of land in Montgomery county, to-wit, the east half of the northeast quarter and sixty acres off of the east side of the west half of the northeast quarter in section 12, and the east half of the northeast quarter of section 13, in township 50, range 4, west; also the east half of the southeast quarter of section 12, township 50, range

4, west.   The case was tried by the court, a jury being waived. There was judgment for defendant, and after unsuccessful motion for a new trial, plaintiffs bring the case to this court by appeal for review.

The plaintiffs are daughters and grandchildren, and the defendant a son, of John S. Dillon, deceased.   In July, 1890, John S. Dillon owned four hundred and forty acres of land in sections twelve and thirteen, township fifty, of range four in said county, which he had occupied with his family for many years prior to his death on February 2, 1897.   On July 12, 1890, he executed a warranty deed to defendant for the recited consideration of two thousand dollars, by which he attempted to convey to him two hundred and forty acres of his land, and at the same time executed a general warranty deed to three of his grandchildren known as the McKelvey heirs, conveying to them one hundred acres of his land.   At the same time he executed a will by which he disposed of his personal property.   The deed to defendant simply described the land as being "80 acres the E ½ of the N. E. ¼ and 60 acres off of the E side of the W ½ of the N E ¼ of sec. 12, and 80 acres of the E ½ of the N E of sec. 13, containing 240 acres according to the U. S. Survey," in the county of Montgomery in the State of Missouri.

He took the deeds and will to his nephew, John Shaw, sealed them in an envelope, wrote his own name upon it and gave it to John Shaw to keep, with certain instructions, that is, to probate the will at his death and deliver the deeds to the persons mentioned therein.

Afterwards, in 1893, he made another deed to the defendant of 80 acres of land that he did not own in 1890, and took this deed also to John Shaw and delivered it to him with the same instructions given him before, Shaw testifying that the original directions in 1890 covered all the papers.

Sometime after this, John S. Dillon went to Shaw's

house and asked him if he had a fire in the kitchen. Shaw responded that he had. Dillon then said to Shaw: "Give me my papers." Shaw got the papers (he had never unsealed them) and delivered them to Dillon. Dillon gave them back to Shaw, and told him to hunt out the deed made to the Mc-Kelvey heirs, which he (Shaw) did, and gave it to Dillon, and Dillon immediately burned it and substituted another deed to only two of the McKelvey heirs, and delivered them to Shaw, but there is no pretension that any instructions were given Shaw at this time as to the delivery of the papers at his (Dillon's) death.

Afterwards, John S. Dillon disposed of a part of the land contained in the deed of 1890 to defendant George V. Dillon, to one Samuel Mudd, executed a deed, and delivered that deed to Mudd, and received the compensation therefor.

Shaw testified that, "Some time in the summer of 1890, John S. Dillon came to my house and told me he had some papers he wanted me to hold. He said a will and two deeds; he wanted me to probate the will at his death. I asked him if he wanted me to put the deeds on file at his death, he said no. He says, 'Give them over to the parties made to, open them and whoever they are made to deliver them to.' About two or three years after that he brought another paper and says, 'Here is another paper I want you to hold.' That was the deed to the land, to the 80 acres of land Mr. George Dillon lives on. And about a year before he died he came to my house again; he come into the house and talked a right smart while and took me out of doors and had a right smart talk. He says, 'Have you a fire in the kitchen?' I told him I had; he says, 'Bring my papers in there,' and he opened them and he says, 'My eyes ain't very good, hunt up the McKelvey deed.' I hunted it up and handed it to him, he says, 'Stick it in the fire,' and he says, 'Now I will tell you what I am driving at.' He says, 'I had that land I wanted to go to the McKelvey boys, I had it made to five,' he says, 'I never slept over it be-

cause they would have to sell it to make a division.' He says, 'I wanted it to remain in their name.' He says, 'I think I have the property fixed like I want it to go; I don't want it to get into law.' At the time he took out the McKelvey deed and burned it, he put another deed in, and sealed it up and handed them back to me. These deeds were never out of my possession afterwards until after I delivered them to the proper· authorities. The deed dated March 21, 1893, is the second one he gave me, this one dated July 2, 1890, is the first one he brought. The deed dated July, 1890, was delivered to me some time about that time and remained in my possession until after his death. I delivered them to the parties, George Dillon and the McKelvey heirs, I think, in February after his death. The deed dated March 21, 1893, was delivered about three years after the other one. It was not out of my possession until after his death, when I delivered it to George Dillon. The land described in the deed of March 21, 1893, John S. Dillon bought about two years after he delivered me the first deed. This deed dated July 12, 1890, is in the handwriting of Captain Hammack. I do not know whose handwriting the deed of March 21, 1893, is."

On his cross-examination the following occurred: "When John S. Dillon brought me the papers in 1890 he did not say anything about retaining control of the land but I know he collected rent on it afterwards; he rented it to his children and grandchildren, part of it to George Dillon, and my understanding is George paid him one-third rent. When he brought me the papers in 1890 he gave me directions to turn them over to the parties going to.

"Q. As to that deed of March 21, 1893, did he give you any instructions? A. He says, 'Here is my papers, turn them over at my death if you outlive me.'

"Q. What did he say when he brought that deed? A. He didn't say anything, just said 'Here is another deed I want you to hold.'

"Q.   Didn't give any instructions at all?   A.   No, sir, the first instructions were in regard to everything.

"Q.   Those first deeds were brought to you in 1890, were they not?   A.   Some time in the summer of 1890.

"Q. .  Can you state with certainty now whether he said anything except to put it away with the other papers?   A. He says here's another paper I want you to hold and turn it over under the instructions he gave before.

"Q.   I'm talking about the first talk. What did he say? A.   That was the McKelvey children deed the second time.

"Q.   He brought you a deed the second time?   A.   Yes, sir, and then he came back and changed it.

"Q.   The 80 acres?   A.   Yes, sir.

"Q.   What instructions did he give you about that?   A. To turn over to the authorities.

"Q.   Now, didn't you testify when your deposition was taken that the only instructions was when he first brought the papers?   A.   Of course, that was the instructions given.

"Q.   Wasn't that all that was given?   A.   Of course, that covered the whole thing, to turn them over to the ones made to.

"Q.   What did he say when he came to get the McKelvey deed you burned?   A.   He wanted to change it, he had it deeded to all five of his grandchildren and they would have to sell it to make a division and he didn't want it sold.

"Q.   What did he say about bringing him the papers? A.   Told me to go and bring his papers.

"Q.   Do you recollect the words he used?   A.   I think so.

"Q.   Tell the court what they were?   A.   He said he wanted to deed it to two so they wouldn't have to sell it and let the two pay the portion of money, he said, 'Bring them into the kitchen.'

"Q.   Did he say, 'Bring me my papers?'   A.   Yes, sir, of course.

"Q.  That's what he said, 'Bring me my papers?'  A. Yes, sir.

"Q.  Well, if he had delivered them to you to be delivered to the parties, what made you give them back?  A. It was his papers, he had a right to call for them.

"Q.  You understood that?  A.  Yes, sir.

"Q.  He had a right to change them if he saw fit?  A. Yes, sir.  He come and took that out and burned it and put the other in.

"Q.  I will ask you if he had given you the papers and you had taken them for the other parties, what made you give them up?  A.  Because he had a right to change them.

"Q.  Do you know who paid the taxes on that land during old man Dillon's life?  A.  He paid the taxes up to the time of his death and he collected rent up the time of his death."

Examination by the court:  "Q.  Were the deeds sealed in an envelope?  A.  Yes, sir.

"Q.  Were they marked on the outside?  A.  Yes, sir.

"Q.  What was on the outside?  A.  His name was on it.

"Q.  John S. Dillon's name?  A.  Yes, sir.  He said he wanted me to deliver them to the parties made to at his death."

Cross-examination resumed:  "After he gave me the papers in 1890, the two deeds and the will, he come and got one of the deeds and burned it and substituted another, and one time he came in 1893 and gave me a deed to the 80 acres of land that Mr. Dillon lives on now.  All of these papers were sealed and had his name on the back of them.  I never saw any of these papers until after his death; they were sealed up until then with the name of John S. Dillon marked on them."

Plaintiffs asked the court to declare the law of the case to be as follows:

"1.   The court declares the law to be that the deed of July 12, 1890, offered by defendants in evidence is void and conveys no title to defendant, George V. Dillon, to any of the land in controversy, because it does not describe the land in controversy or any part thereof, and because the same was and is ambiguous and the ambiguity therein is a patent ambiguity and not subject to be explained by extraneous testimony, and the verdict and judgment of the court as to all the lands described in the petition except the 80 acres described in the deed introduced in evidence by defendants of March 21, 1893, will be for the plaintiff for an undivided three-fifths interest therein.

"2.   The court declares the law that under the evidence no delivery of either deed offered in evidence by defendant George V. Dillon to establish title in him to the land in controversy has been proven and the verdict and judgment of the court must be for the plaintiffs for a three-fifths undivided interest in all the lands described in the petition."

The court refused to declare the law as asked and rendered judgment for defendant.   Thereafter and in due time plaintiffs filed their motion for a new trial, which being overruled they saved their exceptions and bring the case to this court by appeal for review.

There are two points presented for our consideration on this appeal; first, as to whether or not there was a delivery of either of the deeds read in evidence; second, the sufficiency of the deed from John S. Dillon to George V. Dillon of date July 12, 1890, even if delivered, to pass the title to the grantee to the land therein described.

Plaintiffs insist that there was no delivery of either of the deeds to George V. Dillon, which was a prerequisite to their validity.   The authorities all hold that the parting with his dominion over a deed by the grantor is as necessary to its execution as is his signature thereto.   Both are indispensable and in their absence there can be no delivery.   In Huey v.

Huey, 65 Mo. 694, there is quoted with approval the following from Cook v. Brown, 34 N. H. 460, 476:

"There must be a time when the grantor parts with his dominion over the deed, else it can never have been delivered. So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none; and if the grantor dies without parting with his control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it. The depositary must have had such a dominion over the deed during the lifetime of the grantor, as the latter could not interfere with, in order to have any control over it after his decease."

The same rule is announced in Hamerslough v. Cheatham, 84 Mo. 20, and Abbe v. Justus, 60 Mo. App. 300. In fact, this is the general if not universal rule.

After the grantor had delivered the envelope containing the first deed to defendant, the deed to the McKelvey heirs and his will, to his nephew Shaw, to hold with directions to him to deliver the deeds to the grantees therein named, and to have the will probated upon his death, in 1893, when another deed to the eighty acres was brought, the seal to the envelope was broken, and the deed put in under the first instructions. Dillon went to Shaw after the delivery of the last deed, inquired for "my papers," took the envelope, again broke the seal, took the deed to the McKelvey heirs executed in 1890 out, and burned it, and put in another deed. He called the papers *"my papers"* all the time, and exercised the same dominion over them that any person would exercise over papers signed by him, but the dominion of which he had never parted with. They were recognized as his papers by Shaw, and whenever he wanted them for any purpose he got them. The facts clearly show, we think, that the grantor never parted with dominion over any of the deeds, hence, they were never delivered.

Plaintiffs claim that no land is described in the deed to defendant of date July 12, 1890, so that it can be located, and that the deed is absolutely void for want of proper description of the land.    Upon the other hand, defendant contends that the omissions of the township and range in which the land intended to be conveyed lies is a *latent* ambiguity, and that extrinsic evidence was admissible to show what land the grantor intended to, and did, in fact, convey, and that the deed is not void because of such omissions.

The position that the defective description of the land in the deed to George V. Dillon is a *latent* ambiguity and may, therefore, be supplied by extrinsic evidence, is untenable, as the defect is apparent upon the face of the deed, and, therefore, patent, and, as a rule, extrinsic evidence is not under such circumstances admissible to remove such an ambiguity, but the instrument is void.

In the case of Craven v. Butterfield, 80 Ind. 503, it is said: "A patent ambiguity is that which appears to be uncertain upon the deed or instrument; latent, is that which seemeth certain, for anything that appeareth upon the deed or instrument, but there is some collateral matter, out of the deed that breedeth the ambiguity." In that case the uncertainty of the description of the land in the mortgage was patent, and it was therefore held, that parol evidence was inadmissible to cure it. [Palmer v. Albee, 50 Iowa, 429; Ozark Land and Lumber Co. v. Franks, 156 Mo. 673.]

It was held in Ferguson v. Staver, 33 Pa. St. 411, that courts never permit parol evidence to be given, first to describe the land, and then apply the description. So it was held in Chambers v. Ringstaff, 69 Ala. 140, that when a contract or conveyance on its face, or aided by judicial knowledge, equally describes two or more persons, or things, this is a patent ambiguity, or ambiguity apparent. In such case the rule is clear, from which the court will not depart, that parol proof of what

was intended by the contracting parties will not be received. [Carter v. Holman, 60 Mo. 498.]

According to the United States Government survey, there are fourteen different sections of land in Montgomery county numbered twelve, and thirteen different sections numbered thirteen, to either of which the description of the land in the deed under consideration, applies alike, and brings the ambiguity apparent on the face of the deed clearly within the rule relative to patent ambiguities, which can not be corrected by parol evidence, but is absolutely void.

The deed recites that "this conveyance is made as a deed of gift to the son of the said John S. Dillon for the love and affection he bears his son, the said George V. Dillon," and, being a simple gratuity, a court of equity will not enforce it, hence, there can be no correction of it. [Ford v. Unity Church Society, 120 Mo. 498, and authorities cited.]

It follows that the court erred in refusing the declarations of law asked by plaintiffs and in rendering judgment for defendant.

For these considerations the judgment is reversed and the cause remanded. All concur.