MARY L. MITCHELL, APPELLANT, v. NEWTON COUNTY BANK, ET AL., RESPONDENTS.*

In the Springfield Court of Appeals. Opinion filed April 22, 1926.

**1.—Appeal and Error—Appellate Practice—Equity Case.** Action to have plaintiff adjudged owner of shares of stock in bank with defense of equitable estoppel sounded in equity, and was therefore before appellate court for review on the whole evidence as well as the law.

**2.—Estoppel—Owner of Bank Shares Held Not Estopped under Circumstances to Claim Ownership of Shares.** Transferee of shares of stock in bank **held** not estopped by silence from setting up her claim of ownership thereto against bank loaning money to transferor, in whom bank's books showed title, in reliance on his ownership, where she had no knowledge that such transferor was claiming the stock as his own or that he was indebted to the bank.

3.—Same—Silence May Give Rise to Estoppel. Where a person stands by and sees another about to commit or in the course of committing an act infringing upon his rights, and fails to assert his title or right, he will be estopped afterward to assert it.

4.—Same—Silence Without Knowledge Works no Estoppel. Party against whom estoppel is asserted must be apprised of his rights at the time facts giving rise to estoppel occurred, since silence without knowledge works no estoppel.

5.—Same—Estoppel Through Silence—Must Be a Duty to Speak. To constitute estoppel by silence, there must be a duty to speak on the part of the party who would be estopped.

6.—Same—Cannot be Based on Silence Alone. There can be no estoppel based on matters in pais because of silence alone.

7.—Same—Silence Must Amount to Fraud. To constitute estoppel by silence, there must be a failure to speak under circumstances that cause a subsequent claim of right to amount to a fraud upon the one misled by such silence.

8.—Corporations—Corporate Stock—Transferring Title to Stock—Title Transferred by Indorsement and delivery. Title to corporate stock as between the parties passes by indorsement and delivery, regardless of whether the original stock is surrendered, new stock issued, and the transfer noted on the books of the company.

9.—Same—Stock Certificates: Muniment of Title. A stock certificate is a muniment of title; it passes like commercial paper, and is the solemn affirmation of the corporation, under its seal, that the person therein named is the owner of a certain number of the shares of stock.

10.—Banks and Banking—Bank Loaning on Faith of Ownership of Its Stock—Duty of Bank. It was the duty of officers of bank in loaning money to one on the faith of his ownership of its stock, to require something more than his mere word that he owned the stock appearing in his name on their books.

11.—Estoppel—Facts Held Not to Sustain Finding That Transferee of Bank Stock Held Out Another as Owner. Facts held insufficient to sustain finding that transferee of bank stock held out transferor as owner thereof, although transferor appeared on bank's books as owner, voted the stock, and collected dividends in his own name, but there was no evidence that transferee had knowledge of assertions of ownership made by transferor, and the stock certificates were not in possession of transferor.

12.—Principal and Agent—Undisclosed Principal. An undisclosed principal cannot grasp with one hand the fruits of the agent's acts or contracts and with the other put away its liabilities and disadvantages.

13.—Corporations—Stock Certificates. Evidence of ownership of stock is certificate of stock itself.

14.—Banks and Banking—Bank Cannot Loan on Its Own Stock. Under section 11740, Revised Statutes of 1919, a bank cannot loan money relying on its own stock for security.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 726, n. 17; p. 897, n. 81; Agency, 2 CJ, p. 482, n. 42; Banks and Banking, 7CJ, p. 717, n. 67, 68 New; Corporations, 14CJ, p. 478, n. 44; p. 479, n. 45; p. 753, n. 71; Estoppel, 21CJ, p. 1150, n. 89, 90; p. 1151, n. 92; p. 1152, n. 97; p. 1153, n. 98; p. 1174, n. 89; p. 1177, n. 10.

Appeal from the Circuit Court of Newton County.—Hon. Charles L. Henson, Judge.

REVERSED AND REMANDED (*with directions*).

*Leo H. Johnson* and *John T. Sturgis* for appellant.

*L. D. Rice* and *Horace Ruark* for respondents.

DAILEY, J.—This is an action to have plaintiff adjudged to be the owner of certain shares of stock of the Newton County Bank at Neosho, Missouri, and that said bank be required to issue new stock in exchange for and on surrender of the original certificates assigned and endorsed to her. The answer sets up an equitable defense of estoppel, alleging among other things that said stock had been seized and attached under a writ of attachment issued in a suit instituted by defendant bank against one L. E. Mitchell, on certain past due promissory notes executed by said Mitchell to defendant bank; that said bank had loaned to L. E. Mitchell on the faith of his apparent ownership of said stock which had been issued to him at the organization of the bank in September, 1915, which stock was registered on the books in his name; that Mitchell exercised and claimed entire ownership of said stock from the time of the organization until shortly after the attachment suit was brought in July, 1924; "that during all that time plaintiff failed to have the said shares of stock registered in her name and failed to request to have the said shares of stock so registered, neither did she in any way or manner notify the defendant bank or any officer in charge of the same, that she had any right or claim thereto or interest therein." The answer further charged that plaintiff knew of the conduct of L. E. Mitchell in relation to said stock and that all his acts were "done with the knowledge of his plaintiff and her sister, Maria J. Mitchell, with a preconceived design and intent to give him, the said L. E. Mitchell, a false credit and standing with the defendant bank and thus enable him to procure credit therefrom and with and under the arrangement, understanding and conspiracy between them to cheat and defraud such bank out of its money, etc." The reply was a general denial. The cause was tried before the court resulting in a judgment in favor of defendants, from which plaintiff has appealed. The issues in this case sound in equity; therefore, this case is here for review on the whole evidence as well as the law. [Lacks v. Butler Co. Bank, 204 Mo. 455, 102 S. W. 1007.] The trial court, however, made a most comprehensive finding of facts clearly justified by the evidence which we have adopted, although we have not been able to agree with the conclusions of law of the learned trial judge. The finding of facts is as follows:

220 Mo. App.—15.

"During the months of July and August, 1913, the defendant, Newton County Bank, was in the process of organization. To that end the Articles of Incorporation were drawn and signed by seven purported shareholders in which Lee Mitchell subscribed to 60 shares, Armstrong, 53 shares, and Hattler, 122 shares, with the ostensible purpose of keeping and retaining said shares. The remaining stock was subscribed W. A. Phipps, 42 shares, and W. E. Sims, M. T. Rice and L. D. Rice, 41 shares each. The capital stock was 400 shares of the par value of $100 each.

It was the intention of the four persons last named to only hold 10 shares each, and to assign the remaining shares above 10 shares each subscribed, to others who might desire to associate with them in the enterprise.

The said Lee Mitchell's 60 shares were paid for by his check for one thousand dollars and two notes of a Hazeltine, one for four thousand and one for one thousand dollars. The thousand dollar check was the check of Lee Mitchell's.

The Hazeltine notes were in the name of Mariah J. Mitchell but was the property of Mariah J. Mitchell and Mary L. Mitchell, were held half and half. The notes, when used to lift the stock bore the endorsement of the payee, Mariah J. Mitchell, in blank, and were endorsed in blank by said Lee Mitchell and delivered to the bank.

Sixty-five dollars was refunded to Lee Mitchell by the defendant bank, in October. This sixty-five dollars represents accrued interest on said notes, but possibly depleted by the difference in the discount of six per cent note and an eight per cent note.

The 60 shares subscribed by Lee Mitchell were evidenced by stock issued to him in which 5 certificates represented 10 shares each and two certificates represented five shares each, making the 60 shares. The 60 shares, as stated, were issued to Lee Mitchell with his name therein as owner and holder. These shares were all issued on the 29th day of August, 1913, and bore that date and were shortly thereafter delivered to Lee Mitchell.

On the 18th day of September, Mitchell, without the knowledge of his associates or the defendant bank, endorsed four of these 10 shares certificates and two five share certificates, on the back thereof, ostensibly transferring them so as to transfer Mariah J. Mitchell 25 shares and Mary L. Mitchell 25 shares of this capital stock. The plaintiffs, Mary L. and Mariah J. Mitchell, held this stock, from that time forward, without the knowledge of the defendant bank and its officers connected therewith, from that time until a short time before this suit was filed when the first knowledge come to the defendant and its officers of the claim they had to such ownership. The delivery of this stock was made promptly upon such endorsement, to

Mariah J. Mitchell, at Brighton, Colorado, and such delivery was likewise without the knowledge of the defendant and its officers.

It was the secret understanding between Mary L. Mitchell and Mariah J. Mitchell and their brother, Lee Mitchell, that he should buy this stock for themselves, but this purpose was not disclosed to the defendant or its officers or the men organizing the defendant bank, and Lee Mitchell complied with this understanding by making the said endorsement and delivery of the stock, the stock was not surrendered back to the bank for re-issue in their name, nor was it ever disclosed to the organizers of the bank, or the bank or its officers that such was the arrangement or that it had been carried out to that extent.

The plaintiffs, Mariah J. Mitchell and Mary L. Mitchell, never tendered this 25 shares each back to the bank and offer to surrender it for re-issue of stock in their names until July 26, 1924, a few days prior to the filing of this suit.

On September 7, 1913, the bank opened for business and the Hazeltine notes were taken over by the bank on September the 11th, 1913, which was the date of the delivery of the 60 shares of the stock to Lee Mitchell.

The said Lee Mitchell was a member of the first board of directors of the bank duly elected as such by his associates and by re-election remained a member of the Board until September, 1923.

On September the 12th, 1913, the said Lee Mitchell borrowed and gave his note to the bank for the sum of $800, and on September the 15th, 1913, $3000, and on September 24, 1913, gave the note of the Mitchell-Crittenden Tie Company and himself for $6,990. This credit was extended by his associates on the faith of his apparent ownership in the said 60 shares of stock, and such indebtedness was renewed from time to time in amounts varying around ten to twelve thousand dollars and from that time forward and until the time this suit was filed such indebtedness aggregated around sixteen thousand dollars.

The officers of the bank permitted the renewals upon the same apparent ownership, placing no reliance upon the Mitchell-Crittenden Tie Company, and at all times without knowledge that any part of the said 60 shares was held by the plaintiffs, Mary L. Mitchell and Mariah J. Mitchell.

On all occasions, when asked by the bank examiners and by his associates on the board of directors regarding his holding of such shares of stock, the said Lee Mitchell always asserted his ownership thereof, at one time such holding being augmented by 11 additional shares so that at one time he apparently held 71 shares of such stock.

During the whole of this time the said Lee Mitchell continued to vote all of these shares of stock at the annual shareholders meeting, drawing and collecting the dividends thereon in his own name, which

was done with the knowledge of the plaintiffs, who refrained from giving to the defendant any notice of their claim or ownership thereto.

There is no testimony that Mariah J. Mitchell and Mary L. Mitchell knew of the assertions of ownership made by Lee Mitchell.

The defendant bank has instituted suit against said L. E. Mitchell and the Mitchell-Crittenden Tie Company for such indebtedness, which suit was instituted July 2, 1924, in aid of which this stock was attached as the property of the said L. E. Mitchell, but at that time the stock was not in the hands or possession of the said L. E. Mitchell.

The court concludes, as a matter of law that the plaintiffs, Mariah J. Mitchell and Mary L. Mitchell, in holding these shares of stock in secret for something over ten years without disclosing their ownership thereof, thereby invested the said L. E. Mitchell with false credit and left him apparently the owner of the bank stock so far as the bank was concerned in extending a line of credit, are now estopped from claiming and demanding the peremptory mandate of this court to compel the defendant to transfer the said stock to them, at this late date.

The court further holds that their silence further estops them from asking such claim and that while the choice lies in equity as to whether the plaintiffs or the defendant bank shall be losers by reason of the wrongful claim of Lee Mitchell to ownership of the stock, the court must hold the plain principles of equity that the loss must fall upon the one who has occasioned it and therefore the judgment will be for the defendant, dismissing the plaintiff's bill.''

The appellant in this case assigns error in one particular only viz., that the trial court erred in permitting witness after witness to testify that L. E. Mitchell repeatedly, after 1919, when solvency of his notes to the bank was questioned, asserted and claimed ownership of the bank stock. Learned counsel then proceeds to brief the questions of whether the bank could have a lien on the stock, what constitutes a valid transfer of a stock certificate, the question of estoppel and the effect of our statute, section 11, 740, Revised Statutes 1919, on the right of a bank to loan money on its own stock, as well as various phases of all these questions.

Regardless of the numerous points called to our attention, estoppel is the only important question in the case. Respondent contends that since plaintiff failed to let her claim of ownership be known when there was a duty upon her to speak, she is now estopped by her silence from setting up a claim of ownership against one who dealt in good faith upon the apparent ownership of L. E. Mitchell. The equitable principle here invoked has been uniformly upheld in all the courts of this land.

The rule is well founded that "where a person stands by and sees another about to commit or in the course of committing an act infringing upon his rights and fails to assert his title or right, he will be estopped afterward to assert it. Nevertheless, it is necessary to an estoppel that the party against whom it is claimed at the time he apprised of his rights, since silence without knowledge works no estoppel." [21 C. J. 1152.] And the same authority, at page 1167, holds, "that there should have been a duty to speak."

This theory is also clearly defined in Guffey v. O'Reiley, 68 Mo. l. c. 425. In a recent Missouri case it was held that "If the real owner, by his acts and conduct has led the maker of a note to pay it to another under the supposition that that other is the owner, or the agent for its collection, then the true owner is estopped from claiming repayment." [Meier v. Bank, 226 S. W. l. c. 342.]

"An estoppel may arise from mere silence, or passive conduct on the part of one who has knowledge of the facts and whose duty it is to speak, where such silence or conduct is misleading." [Palmer v. Welch, 171 Mo. App. 597, 154 S. W. 435.]

"The important and primary ground of estoppel by matter *in pais* is that it would be fraud in a party to assert what his previous conduct had denied when on the faith of that denial others have acted." [Lange v. Insurance Co., 254 Mo. l. c. 509, 162 S. W. 589.]

In all the above cases and in the many others cited by appellant it clearly appears that in order to constitute estoppel by silence there must be a duty to speak on the part of the party who would be estopped. There can be no estoppel based on matters *in pais* because of silence alone. There must be a failure to speak under circumstances that cause a subsequent claim of right to amount to a fraud upon the one misled by such silence. Unless, then, plaintiff in this case was under some duty to let her ownership of the stock in question be known to defendants, she could not be estopped on account of her failure to do so. Referring to the evidence, the trial court has properly found that the stock was purchased for plaintiff and her sister by L. E. Mitchell with their property; that the stock certificates were issued in the name of L. E. Mitchell and for eleven years thereafter, the books of the defendant bank continued to show title in him. But the original stock certificates themselves were endorsed and delivered by L. E. Mitchell to his sisters immediately after they were issued. There can be no question that the title to corporate stock as between the parties passes by indorsement and delivery regardless of whether the original stock is surrendered, new stock issued and the transfer noted on the books of the company. [Merchants' National Bank v. Richards, 6 Mo. App. 454; Trust & Savings Co. v. Home Lumber Co., 118 Mo. 447, 24 S. W. 129; McAllister v. McCune, 96 U. S. 87, 24 L. Ed. 525; O'Neil v. Wolcott Mining Co., 174 Fed. 527, 27 L.

R. A. (N. S.) 200; Mapleton Bank v. Standard, 8   Idaho 740, 67 L. R. A. 656 and note; 7 R. C. L. 265.]

In the case at bar, plaintiff became vested with the absolute, legal title to the stock upon receipt of the certificates properly endorsed. There was nothing more for her to do in order to perfect her title. It is true that, so long as the transfer was not made on the books of the defendant bank, she could neither vote at stockholders meetings nor collect dividends. The bank was, in those particulars, protected by its record. But there was no duty on plaintiff to have the stock transferred on the books of the company. Failure to do so could not be made a basis for estoppel in the absence of knowledge of the claim of ownership on the part of another. There is no evidence that plaintiff had knowledge that L. E. Mitchell was claiming the bank stock as his own, or that he was indebted to the bank, and the trial court so found. Plaintiff was not bound to anticipate that defendant bank or any other person would assume that, since the name of L. E. Mitchell appeared on the books of the company as the owner, that he was, therefore, the actual owner of the stock. A stock certificate is a muniment of title. "It passes like commercial paper, and is the solemn affirmation of the corporation, under its seal, that the person therein named is the owner of a certain number of the shares of stock." [Vanstone v. Goodwin, 42 Mo. App. 47.]   No officer or employee of the bank ever demanded of L. E. Mitchell that he produce the stock certificates. If they loaned him money on the faith of his ownership of the stock, it was their duty, for their own protection and that of their depositors, to require something more than the mere word of L. E. Mitchell that he owned the stock appearing in his name on their books. [Trust & Savings Co. v. Home Lbr. Co., 118 Mo. 447.]   There is evidence that at one time, in 1919, four or five years prior to the institution of this suit, the question of L. E. Mitchell's ownership of this stock was raised at a meeting with the State Bank examiner. Mitchell promised to produce the stock certificates and place them with an officer of the bank, but never did. Defendant bank, even after that, continued to renew Mitchell's notes and loan him money. This evidence to our minds indicates a lack of proper vigilance on the part of the bank officers if, as they state, they were loaning Mitchell money solely on the faith of his ownership of the stock. They had no right to rely on the record title indicated by their books.

In addition to the question of estoppel by silence, respondents contend that plaintiff is estopped by reason of "holding out L. E. Mitchell as the apparent owner;" also that "where one of two innocent persons must suffer from the wrong of a third, he whose misplaced confidence has been the occasion for the wrong must bear the loss; and under the doctrine of 'laches.' All the foregoing propositions are forms of estoppel hereinbefore discussed.

As to the first proposition the trial court found that Lee Mitchell voted the stock in question, collected dividends in his own name and sent his own check to plaintiff, all with her knowledge. But the court also found that plaintiff had no knowledge of the assertions of ownership made by Lee Mitchell and likewise, found that the stock certificates were not in his possession. We do not consider that evidence sufficient to sustain a finding that plaintiff held out Lee Mitchell as the owner. In Leete v. The State Bank of St. Louis, 115 Mo. 184, 1. c. 204, cited by respondent, the finding of the referee indicates that the husband who purchased stock in his own name with his wife's money, never assigned the stock to her and continued to hold same in his own name. Our Supreme Court, speaking through Judge SHERWOOD, held that ''In such circumstances, we hold she (the wife) was estopped and postponed as to his creditors, as much as if she had been a *feme sole*.'' But in the case at bar, the stock certificates were assigned and delivered to the true owner, hence we hold plaintiff did not clothe Lee Mitchell with apparent ownership.

Respondent suggests that plaintiff is estopped on the theory of agency, that is, that an ''undisclosed principal cannot grasp with one hand the fruits of the agent's acts or contracts and with the other put away its liabilities and disadvantages.'' The principle is well established, but is only a re-statement of the proposition of holding another out as the owner. The same may be said of the other forms of estoppel advanced by respondents. They all fail because one element of estoppel is lacking, viz., failure on the part of plaintiff to perform some duty. To our minds, the failure, if any, must be attributed to the bank which did not require the third person who is responsible for the situation to produce the evidence of his ownership of the stock, which, under the law of this State, is the certificate of stock itself.

There is some question in this case as to whether the bank loaned the money on the faith of Mitchell's record ownership of the stock which questions would involve a consideration of the time and amounts of the various loans made to him by the bank. There is also some question as to whether the bank attempted to loan its money relying on its own stock for security, which, under our statute, it could not do. [Sec. 11, 740, R. S. 1919.] Since we have decided against defendants on the question of estoppel these questions need not be further considered.

The judgment should accordingly be reversed and remanded with directions that judgment be entered according to the prayer of plaintiff's petition. It is so ordered. *Cox, P. J.*, and *Bradley, J.*, concur.