PAUL BAKEWELL, JR., Executor Under Will of Crombie S. Chesbro, Deceased; PAUL BAKEWELL, JR., Trustee Under Trust Instrument Executed by Anne G. Chesbro; Anne G. Chesbro, Minnie D. Chrisholm, Frances Evarts Schlappi, Mabel Evarts, Helen Evarts Coe, and Kingsley Chesbro Evarts v. OLIVIA J. CLEMENS, Appellant.—No. 39560.—190 S. W. (2d) 912.

Division One, November 5, 1945.

Rehearing Denied, December 3, 1945.

*G. A. Buder, Jr.,* for appellant.

*John E. Cramer, Jr.,* for respondents.

CLARK, J.—From a decree in equity requiring her to turn over to respondents 400 shares of the corporate stock of the Werner Saw Mill Company, defendant, Olivia J. Clemens, has appealed.

Plaintiffs below were Paul Bakewell, as executor of the estate of Crombie S. Chesbro, deceased, and trustee in an instrument executed by Chesbro's widow, and the beneficiaries named in the trust instrument. Defendants were Mrs. Clemens and the Werner Company.

The petition alleged in substance: that Chesbro died in 1941 leaving a will which named Bakewell executor and devised the Werner stock and other corporate stock to testator's widow; that the Werner stock was evidenced by certificate No. 64 made out to Chesbro; that under orders of the probate court the executor on July 6, 1943, as-

signed this certificate and delivered it to the company with instructions to issue a new certificate to Mrs. Chesbro; that the secretary of the Werner Company stated there would be a delay in issuing a new certificate due to the absence from the State of the company president; that on August 3, 1943 Mrs. Chesbro executed an irrevocable trust instrument to Bakewell as trustee assigning certain personal property including the Werner stock, and at the same time executed a stock power authorizing the transfer of the stock on the books of the company; that on August 4, 1943 Bakewell notified both Mrs. Clemens and the Werner Company of the execution of the trust instrument and instructed the company not to issue a certificate to Mrs. Chesbro, as had previously been requested, but to return certificate No. 64 so that a new one could be issued to the trustee; that the secretary of the company said the certificate could not be removed from a safety box until the president should return in September; that on August 6, 1943 Mrs. Clemens wrote a letter, and procured the signature of Mrs. Chesbro thereto, expressing a desire that the Werner stock go to Mrs. Clemens; that the secretary issued a certificate in the name of Mrs. Chesbro and he and Mrs. Clemens induced Mrs. Chesbro to assign the same to Mrs. Clemens without the payment of any consideration; that the secretary then issued a new certificate to Mrs. Clemens, sent it to the president and induced him to sign it by falsely representing that same was agreeable to Bakewell. Then follows allegations that the assignment was obtained by the secretary and Mrs. Clemens from Mrs. Chesbro by undue influence and a prayer that the certificate to Mrs. Clemens be canceled, Bakewell as trustee be declared the owner of the stock and the company be ordered to issue a certificate to him, etc.

Mrs. Clemens filed an answer and cross bill. In her answer she admitted the 400 shares were among the assets of Chesbro's estate and were transferred by the executor to Mrs. Chesbro. She denied all other allegations of the petition and then alleged that Mrs. Chesbro endorsed and delivered the stock to her. In her cross bill she alleged that on and prior to August 7 Mrs. Chesbro was the absolute owner of the stock and on that date endorsed and delivered the stock to her; that, if Mrs. Chesbro executed the trust instrument, she did not know and understand its contents and had no intention of transferring the Werner stock to the trustee; that the inclusion of that stock in the trust instrument was the result of a mutual mistake, or mistake on the part of Mrs. Chesbro and knowledge on the part of Bakewell. The cross bill prayed to reform the trust instrument and adjudge Mrs. Clemens to be the owner of the stock.

Respondents' answer to the cross bill was a general denial of the new matter.

The decree found all the issues of fact for respondents substantially as alleged in their petition.

Appellant asks us to reverse the decree on the following grounds: (1) As Bakewell had been attorney for Mrs. Chesbro and no consideration was paid for the trust instrument, it was incumbent on respondents to prove the agreement did not result from abuse of confidence and undue influence; (2) Failure of respondents to call as a witness the notary who took the acknowledgment to the trust instrument, she being employed in Bakewell's office; (3) Bakewell's refusal to furnish Mrs. Chesbro ▮▮▮ copies of the papers she signed on August 3; (4) Burden was upon respondents to sustain a voluntary trust by more than a preponderance of evidence; (5) The trust is invalid because not completed by endorsement and delivery of the stock certificate.

The record of the evidence is voluminous and much of it is irrelevant to any issue made by the pleadings. In saying this we intend no criticism of the chancellor who tried the case, for in equity cases a wide latitude in the admission of testimony will more often promote the ends of justice than will a strict adherence to technical rules. However, such method of trial increases the work of the appellate court in separating the wheat from the chaff. For many years Mrs. Clemens was employed by the Werner Company while the late Mr. Chesbro was its secretary. Much time and space is consumed by appellant in proving the services which she rendered Mr. Chesbro and that it was his intention that she should have the stock. Yet her claim in this suit does not rest upon that base. She does not claim that Mr. Chesbro gave her the stock or any interest in it. Her pleadings admit that the stock was among the assets of his estate, was duly transferred to Mrs. Chesbro and that Mrs. Chesbro was the unqualified owner of it in August, 1943. Appellant does not claim the stock was transferred to her in consideration for services rendered either to Mr. or Mrs. Chesbro.

The evidence shows that in August, 1943, Mrs. Chesbro was an aged lady, improvident in the use of money and sadly in need of advice and assistance in the management and preservation of her property. She was produced as a witness and was questioned at length by counsel on both sides. Her testimony is of little value to either side, for it shows that at the time of the trial she had no very clear remembrance of the transactions which took place nearly a year before, in August, 1943, although she remembered signing a paper and discussing the Werner stock. She also said she wanted her sister to have her property at her death; again, that she did not intend to give it to Mrs. Clemens. She said that Mrs. Clemens and the secretary of the Werner Company came to her apartment and got her to endorse the stock certificate to Mrs. Clemens, telling her they had discussed the matter with Bakewell and it was all right with him.

No claim is made by either side that Mrs. Chesbro was mentally incompetent in August, 1943. If such a claim should be established

both the trust instrument and the transfer to Mrs. Clemens would be defeated. But each side, at least tacitly, admits that she was not very adept in the management of her affairs.

The trust instrument grants Mrs. Chesbro the entire income for life with right to use the principal if necessary. At her death the income goes to her sister and the ultimate beneficiaries are a nephew and nieces. She has no descendants.

If the claim of appellant is sustained Mrs. Chesbro and her relatives will be deprived of both the income and principal of at least 45 per cent of her property, possibly a much greater per cent.

There is no doubt that Mrs. Chesbro signed and acknowledged the trust instrument. Bakewell testified that he discussed it with her and she understood its contents. She is not here claiming that she made a mistake. It is doubtful, to say the least, that appellant as an alleged voluntary donee has legal standing to make such a claim. [Bartlett v. White (Mo.), 272 S. W. 944, 955; Mudd v. Dillon, 166 Mo. 110, 121, 65 S. W. 973; 53 C. J., pp. 913, 914.]

Now as to legal points made by appellant: (1) Bakewell was Mrs. Chesbro's attorney and she had implicit confidence in him. That alone does not raise a presumption of undue influence. We cannot say that Mrs. Chesbro has been damaged by the execution of the trust instrument. Under the circumstances she may have been benefited. Nor can we say that Bakewell has gained a benefit except the doubtful benefit of whatever compensation he may be allowed for his trouble in acting as trustee. Besides, appellant's pleading makes no charge of undue influence. It is based on mistake.

(2) Failure of Bakewell to call an employee as a witness. This refers to the notary who took the acknowledgment of Mrs. Chesbro to the trust instrument. There was no indication that the notary knew anything about the transaction. Notaries are often called in after the discussion is over and the instrument drawn. Here the notary certified that Mrs. Chesbro executed the paper as her free act and deed. Appellant did not make this point in her motion for new trial.

(3) Failure of Bakewell to furnish copies to Mrs. Chesbro. He testified that she telephoned him to ignore her request for copies.

(4) Increased burden of proof because of confidential relationship. As already stated, respondents are not charged with exercising undue influence. However, appellant is so charged by the petition and there is evidence of an intimate personal relationship between appellant and Mrs. Chesbro. Appellant frequently visited Mrs. Chesbro in her apartment; helped her dress, made entries in her bank book, discussed personal and financial matters with her; went with her on several occasions to Bakewell's office and on one of these occasions was present when Mrs. Chesbro executed a will naming appellant as beneficiary. Appellant had the burden of establishing a gift by clear

and convincing testimony and the burden was on respondents to establish the trust by the same character of proof. The chancellor was satisfied with the proof offered by respondents and from the record we cannot say he was wrong.

█ (5) Was the trust incomplete because the stock certificate was not endorsed and delivered? Appellant cites Van Studdiford v. Randolph (Mo. App.), 49 S. W. (2d) 250. That case turned upon the question of whether the parties intended to transfer title to the trustee in praesenti. That question is not in the instant case for here the trust instrument clearly shows an intention to transfer title at the moment the trust instrument was executed. Appellant also cites Brinkerhoff-Farris Trust Company v. Home Lumber Company, 118 Mo. 447, 24 S. W. 129, and Mitchell v. Newton County Bank, 220 Mo. App. 223, 282 S. W. 729. Those cases hold that, absent statutory or corporate restrictions, title to corporate stock will pass by endorsement and delivery, but they do not hold that to be the only method by which title may be transferred. In the instant case the stock certificate was not in the possession of the trustor. Symbolic delivery only was possible. This was effected by execution of the trust instrument and the stock power directing transfer on the books of the corporation. That was sufficient to transfer title. [18 C. J. S., p. 931, sec. 394.]

█ The stock having been transferred to the trustee, Mrs. Chesbro could not thereafter give it to appellant.

We find no reversible error in the chancellor's rulings, nor can we hold that he was wrong in his conclusions as to the facts.

. The decree is affirmed. All concur.