**In the Matter of the ESTATE of Louis L. KATICH, Deceased.**

No. 38979.

Missouri Court of Appeals, St. Louis District, Division Two.

April 25, 1978.

Fred Boeckmann, Clayton, for appellant.

John R. Musgrave, Coburn, Croft, Shepherd & Herzog, Roy D. Mueller, St. Louis, for respondent.

STEPHAN, Judge.

Appellant, Dorothy Martin, is the executrix of the will of Louis L. Katich, deceased; and, in such capacity, filed exceptions to the report of the inheritance tax appraiser in the Probate Court of the City of St. Louis. She is also named as a legatee and devisee in the will; and, as such, she filed a petition to construe the will so as to distribute all personal property in the estate to her.

The dispute arises as a result of the wording of Article III of the will, which reads as follows:

"I hereby give and bequeath *to my grandniece DOROTHY MARTIN, all my personal property*, to have and to hold as her absolute property forever.

All the rest, residue and remainder of my estate of every kind and description both real and *personal property*, wheresoever located I give, devise and bequeath *to the following* or their heirs, to my niece WILHELMINA PUTICH, to my niece DOROTHY GAVRAN, to my nephew SAM KATICH, to my sister-in-law MARY C. HANNIBAL, and to my grandniece DOROTHY MARTIN, to have and to hold as their absolute property forever, share and share alike." (Emphasis added.)

The will was drafted at the request of the testator by a funeral director who was unskilled in the law. It replaced an earlier

will in which Wilhelmina Putich had been named executrix and in which Dorothy Martin was not mentioned, although the other residuary legatees were. The probate court overruled the exceptions and construed the will so as to distribute to her only the tangible personal property and one-fifth of the residuum with one-fifth to each of the other four persons named. The circuit court affirmed, and we affirm the order of the circuit court. Our efforts herein were greatly facilitated by the excellent briefs filed by counsel.

Appellant's basic contention is that under the first sentence of Article III, supra, she is entitled to all of the personal property in the estate, tangible and intangible. In support of this position, she urges that the trial court erred in permitting the scrivener to testify concerning the testator's intent with respect to the first sentence of Article III, that the construction accorded by the probate and circuit courts to Article III was against the weight of the evidence, and that the specific provision giving "all my personal property" to appellant should prevail over the general provisions of the residuary clause. We take these assignments of error in order, reviewing the same as in causes of an equitable nature. *Cranford v. Langston*, 356 S.W.2d 581, 584 (Mo.App.1962).

The scrivener was permitted, over appellant's objection, to testify that the bequest of "all my personal property" to Dorothy Martin was intended to implement Mr. Katich's wish, expressed to the scrivener, that Mrs. Martin receive Mr. Katich's furniture and that the reference to personal property in the residuary clause meant all personal property other than furniture.[1]

It is clear that latent ambiguities in a will may properly be explained by testimony of the scrivener concerning intentions of the testator. *Evans v. Volunteers of*

---

[1] Asked, "What do you mean by 'personal property' there?", i. e. in the residuary clause, the scrivener testified:

"A Well, if he had a car. See, I didn't know if he had a car or not, sir, or any other property that he could have had besides the furniture.

Q How did you differentiate in the first paragraph between personal property and the second paragraph personal property?
A The first one was supposed to be furniture, sir.
Q That's not what you wrote down, was it?
A No, sir, I didn't."

*America,* 280 S.W.2d 1 (Mo.1955). In that case, a beneficiary under the will was referred to therein as the "Volunteers of America, commonly known as the Salvation Army". The court stated that the ambiguity was "latent" because "[t]he uncertainty does not become apparent until it is shown that the Volunteers of America and the Salvation Army are two separate, independent, charitable corporations and not one organization known by the two names." Id. 4.

■ Such is not the case here. Use of the phrase "personal property" in the clause relating to Dorothy Martin individually and in the clause relating to all the residuary legatees gives rise to a patent ambiguity, for the uncertainty is immediately apparent on the face of the instrument. See *Citizens National Bank v. Hanes,* 541 S.W.2d 70, 71 (Mo.App.1976); *Mudd v. Dillon,* 166 Mo. 110, 65 S.W. 973, 975 (1901). Where an ambiguity is patent, it has been said that:

"The general rule is that parol evidence as to the testator's declarations concerning his intention, whether made before, at the time of, or subsequent to, the execution of his will, are incompetent upon the question of the construction to be given the language employed in the instrument. This for the reason that the testator's intention is to be ascertained from the will itself, considered in the light of relevant, extrinsic circumstances where the language used is ambiguous; and were parol evidence of the testator's verbal declarations to be admitted, not only would the result be to subject the question of his intention to evidence of declarations which he, being dead, could not dispute, but it would also, in effect, be violative of the statute which requires all wills to be made in writing."

*Aurien v. Security National Bank Savings & Trust Co. of St. Louis,* 137 S.W.2d 679, 684 (Mo.App.1940). See also *Evans v. Volunteers of America,* 280 S.W.2d 1, 5 (Mo. 1955) and *Winkel v. Streicher,* 295 S.W.2d 56, 58–59 (Mo.banc 1956). Thus, if the "general rule" applies here, it would appear that the scrivener's testimony concerning

Mr. Katich's intentions should not have been admitted. However, such error, if error it be, does not require reversal of this court-tried case.

In *L. S. v. L. M. S.,* 538 S.W.2d 753, 755 (Mo.App.1976), this court said:

"Error in the admission and rejection of evidence in a court-tried case does not have the same significance accorded such error in a jury trial. Such error in the court-tried case is not cause for reversal because '. . . the appellate court considers such evidence in the record as deemed admissible, and excludes from consideration evidence improperly admitted and reaches its judgment on the competent evidence offered without regard to the trial chancellor's ruling.' *Linders v. Linders,* 356 Mo. 852, 204 S.W.2d 229, 234 (Mo.1947); *Martin v. Norton,* 497 S.W.2d 164, 169 (Mo.1973)."

Thus, we decide the case without regard to the testimony of the scrivener and, in view of the result reached below, observe that the trial court apparently took the same approach.

■ Appellant next contends that it was against the weight of the evidence for the trial court to construe the phrase "all my personal property" in the first sentence of Article III as meaning only tangible personal property. We measure this contention against Rule 73.01 as explicated by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976) where it is said:

"Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong."

Having thoroughly examined the record of the proceedings in the trial court and the briefs of the parties, we are unable to harbor such "firm belief" and, indeed, hold that there is substantial evidence to support the trial court's construction of the will.

The trial court properly admitted certain extrinsic evidence, other than the testimony of the scrivener, to aid it in construing the will and ascertaining the testator's true in-

tent. *Aurien*, supra, 683[4]. Appellant now argues that the following facts permit no conclusion other than that Mr. Katich intended for her to have all of his personal property:

(a) that Dorothy Martin and her family lived near testator and took care of him both before and during his final illness;

(b) that Dorothy Martin was the only beneficiary with financial obligations toward young or growing children, and the other beneficiaries were either retired, on pensions or were gainfully employed;

(c) that Samuel Katich and Dorothy Gavran, respondents herein, lived far from testator and seldom visited him.

Although the foregoing facts would support the conclusion appellant seeks, they do not preclude that reached by the trial court.

It is true that appellant and her family gratuitously extended many kindnesses to the testator in the final months of his life. During 1974 appellant and her sons went shopping for Mr. Katich, cut his grass, and ran errands for him. In August of 1974 his physical condition deteriorated to the point where he needed someone with him at all times. Appellant's eighteen year old son, Robert, moved into Mr. Katich's home, cooked and cleaned for him, "helped him when he had to get up from bed or anything, to go to the bathroom, and so forth." Robert continued to live with Mr. Katich until he entered a hospital in the early part of February, 1975, where he died on February 21. Under the circumstances, it is understandable that Mr. Katich would have, on September 20, 1974, executed a new will to include appellant as one of the objects of his bounty.

However, the trial court could well have determined that by the inclusion of appellant, Mr. Katich did not mean to exclude the other residuary legatees, all of whom were more closely related to him than was appellant, from sharing in his intangible personal property. By naming them again in his last will, he effectively ratified his desire that they share in such property;

and, to adopt appellant's interpretation of the will would render nugatory that wish. In further support of the construction placed on the will by the trial court, we note that all of the legatees other than appellant and an elderly widow resided great distances from Mr. Katich's home in St. Louis, making it all the more reasonable that he would leave his tangible personal property to Mrs. Martin. For these reasons, we cannot agree that the trial court's ruling was against the weight of the evidence and rule that point against appellant.

■ We also reject appellant's third point, i. e., that the first reference to personal property in Article III is specific and should, therefore, prevail over the use of the phrase in the residuary clause. While recognizing that specific provisions of wills ordinarily do prevail over those that are general, we are not persuaded that such rule has any application here. The first reference to personal property can be said to be more specific than the second only because the latter appears in conjunction with a reference to real property and is followed by the names of five persons, of whom the appellant is one. Under the circumstances of this case, we find apposite the rule that, where possible, no part of a will should perish by construction. *Obetz v. Boatmen's National Bank of St. Louis*, 234 S.W.2d 618, 621 (Mo.1950); *Adams v. Conqueror Trust Co.*, 217 S.W.2d 476, 481 (Mo. 1949). In *Obetz*, supra, 623, the court recognized that, "A genus may be a species with reference to a higher genus and a species may be a genus in relation to a lower species." We believe the trial court correctly held, in effect, that the personal property given to appellant in the first sentence of Article III was a species—tangible personal property—and that the term "personal property" was used the second time in the generic sense after the tangible property was carved out. Only such construction gives meaning to both uses of the term.

Affirmed.

STEWART, P. J., and REINHARD, J., concur.